## WALCIS ET AL. *v.* KOZACIK.

[No. 12,791. Filed May 20, 1927. Rehearing denied November 17, 1927.]

1. TRIAL.—*Special finding should not contain recitals of evidence or conclusions of law.*—Special findings of fact should not contain recitals of evidence nor should they contain conclusions of law, but the fact that a special finding contains either recitals of evidence or conclusions of law does not invalidate it. p. 490.

2. TRIAL.—*Finding of amount due on a contract is finding of ultimate fact.*—A finding of the amount due on a contract for the purchase of real estate, being the result of a computation from the terms of the contract and the amounts paid thereon, is a finding of an ultimate fact and not a conclusion of law (*Smith* v. *Wells*, 72 Ind. App. 29, distinguished). p. 490.

3. SPECIFIC PERFORMANCE.—*Finding held sufficient to warrant decree for specific performance.*—A finding that a husband and wife, being the owners as tenants by the entirety of a certain tract of ground and the buildings thereon, leased the same to the plaintiff for a period of three years, said lease containing an option to purchase on specified terms, together with a finding of a supplementary contract executed by the lessors confirming the option, and a further finding that they had refused to perform the contract, was sufficient to warrant a decree for specific performance. p. 491.

4. SPECIFIC PERFORMANCE.—*Contract by purchaser for resale of property bought will not preclude action against vendors for specific performance.*—The fact that one who has agreed to purchase real estate has contracted to sell it after he has obtained title will not restrict the purchaser to an action for damages

and preclude his maintaining a suit against his vendors for specific performance where there was a failure to show that the resale agreement is still in force or its terms, even if otherwise he would be so limited. p. 491.

5. SPECIFIC PERFORMANCE.—*Decree for specific performance not precluded by purchaser's resale contract where his vendee's damages not shown.*—Where one who has contracted to purchase real estate has entered into a valid contract to resell it on obtaining title thereto, this would not preclude a decree for specific performance where the court made a special finding of facts and the finding did not show the amount of damages that the purchaser's vendee would suffer by vendors' breach of the contract. p. 491.

6. SPECIFIC PERFORMANCE.—*Party to unobjectionable contract to convey real estate entitled to specific performance.*—A party to a complete unobjectionable contract to convey real estate is as much entitled to a decree of specific performance as he is to a judgment for damages for its breach. p. 491.

7. VENDOR AND PURCHASER.—*Delay in consummating deal while perfecting title contemplated when vendor's title was to be "merchantable."*—Where a lease of real estate gave the tenant an option to purchase during the term of the lease, which was exercised, and a supplementary agreement was executed requiring completion of the deal within a month if vendor's title was merchantable, it was clearly contemplated that if the title was not merchantable, a reasonable time after the date fixed would be allowed to make it so, and the purchaser's right to exercise option could not be forfeited because of the delay necessary in perfecting the title. p. 492.

8. VENDOR AND PURCHASER.—*Forfeiture of purchaser's rights not justified where delay in consummating deal was caused by efforts to perfect title in accordance with contract.*—Purchaser's delay in consummating purchase of real estate under a contract requiring the vendor to furnish an abstract showing "merchantable title" did not justify a forfeiture of his rights under the contract where abstract did not show a merchantable title and the intervening time was spent in an effort to make it merchantable. p. 492.

9. SPECIFIC PERFORMANCE.—*Tender of amount due, when unnecessary.*—After vendor's refusal to perform, a tender of the amount due is not necessary before purchaser's suit for specific performance. p. 492.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Suit by Michael E. Kozacik, Jr., against George Walcis and his wife for specific performance. From a de-

cree for plaintiff, the defendants appeal. *Affirmed.*
By the court in banc.

*L. L. Bomberger, Oscar Haney* and *Bomberger, Peters & Morthland,* for appellants.

*Frederick Crumpacker* and *Edwin H. Friedrich,* for appellee.

NICHOLS, J.—This appeal is from a judgment decreeing to appellee specific performance of a contract for the purchase of a certain two-story store, apartment and theatre building in East Chicago, Lake county, Indiana, and the two lots upon which it is built. The appeal is based upon the findings of fact and conclusions of law stated below, and the assignments of error present only the question as to whether the court erred in its conclusions of law.

The complaint was in one paragraph and answered by a general denial. The facts as alleged in the complaint and found by the court are substantially as follows: Appellee and appellants, who are husband and wife, are all residents of Indiana Harbor, a part of East Chicago, Indiana. On March 24, 1923, appellants leased to appellee in writing the theatre on the ground floor of the building for a period of three years from April 1, 1923, to March 31, 1926, for a rental of $400 per month. The building was owned by appellants and, in addition to the moving picture theatre, included certain stores on the main floor and flats above. The lease described the property as follows:

"The theatre on the ground floor of the two story brick building, situated on Lot 9 and the northeasterly 25 feet of Lot 10, in Block 69, in Indiana Harbor," etc.

The lease contained clauses giving appellee the option to purchase as follows: "It is further agreed, by and between the parties hereto, that at the end of three (3) years, on April 1st, 1926, or any time prior thereto, that

said first parties will sell, and second party may purchase, the above described property for the sum of $65,000 and that if purchased by said second party, first parties will give a good and sufficient warranty deed to said second party, free and clear of all encumbrances or liens, and an abstract down to date showing merchantable title.

"It is further agreed, that if said second party, purchases said property as above specified, that first parties will allow as a credit upon said purchase price of said property, the sum of $50 per month, for each month's rent that second party has paid under this lease, plus the sum of $600.

"It is further agreed that if said second party purchases said property as above specified, that first parties will take back a first mortgage of $50,000 as part of the purchase price of said property. Said mortgage shall run for five years and bear 7% interest, payable semi-annually, and that second party will pay to first party as a consideration for accepting said mortgage, a commission of 3%, and second parties agree to pay to first parties on said mortgage, the sum of $5,000 at the end of the first year and $5,000 at the end of the second year."

Appellee went into possession of the theatre April 1, 1923, and has continued in possession until this time. On August 13, 1924, appellee exercised the option to purchase, paid appellants $1,000 on the purchase price and executed with appellants the following receipt and memorandum:

"Indiana Harbor, Indiana,
"August 13, 1924.

"Received of Michael E. Kozacik, Jr., the sum of $1,000 deposit on purchase of Lot Nine (9) and the Northeasterly 25 feet of Lot Ten (10) in Block 69, Original Town of Indiana Harbor, and all buildings thereon and

better known as 3433-35 Michigan Avenue, Columbia Theatre Building. Purchase price being $65,000 on which WE agree to accept a $50,000 first mortgage as per agreement entered into March 24, 1923, and balance of $14,000 to be paid when title is found merchantable and Warranty Deed is delivered.

"It being understood that eight months of taxes for year 1924 are to be paid by ourselves. Insurance on buildings to be pro-rated and we also to receive a fair value for coal now in building.

"That said Michael E. Kozacik, Jr., to pay $1,500 commission for said loan as per agreement of March 24, 1923, and is also allowed a deduction for 17 months rental at $50 per month plus $600 as per said agreement which amounts to $1,450.

"It being agreed and understood that if title to said property is merchantable this deal is to be completed on or before September 15, 1924.

> "George Walcis,
> "Zuzi Walcis,

"Above agreement accepted.

By Michael Kozacik, Jr.,"

Prior to August 13, appellee had talked with representatives of the Calumet Tobacco Company concerning the sale of the property by him to the tobacco company, after he should acquire the same by purchase from appellants. A few days after August 13, appellee accepted a deposit from the tobacco company for the purchase of the property and gave his memorandum receipt therefor. Shortly after August 13, appellants delivered their abstract to appellee for examination. He had it continued to August 13 and delivered the same to Mr. Perry Chapin, an attorney acting for the tobacco company, for examination, who submitted a written opinion on September 4. The opinion shows that the

title was in appellants, but not merchantable, pointing out numerous defects which we do not need to set out.

For the purpose of making the title merchantable, appellant George Walcis was called to Mr. Chapin's office in Hammond shortly after September 4. There followed various meetings at Chapin's office between appellant George Walcis, Chapin and John Manta, a business associate and representative of appellee, at which meetings were discussed the steps necessary to clear the title of the objections. These conferences extended over the period from September 4, until sometime in the month of December, 1924. A guaranty policy, guaranteeing the title had been issued to appellants by the Chicago Title and Trust Company, January 31, 1918, and appellants took the position that, because of this policy, the title was merchantable, and that no steps were required to make it good, hence would take none; but this policy contained certain exceptions to the guaranty, some of which, to say the least, were meritorious, and appellee was compelled to take steps to remove them. During the time these steps were being taken to perfect the title, and until January 3, 1925, the abstract was in the hands of one or the other of the attorneys or of Mr. Manta, agent of appellee, it being in their hands for use in connection with removing the objections to the title. On January 3, 1925, appellant George Walcis obtained possession of the abstract, giving his receipt reciting that he received it of appellee, "it being understood this abstract to be delivered when it will be needed by the said Michael E. Kozacik, Jr." At that time, he said he was purchasing a home and required the abstract for a temporary loan. The title was satisfactory to appellee early in January, 1925, and before January 5, he made several efforts to see appellant George Walcis, but did not see him. On

January 6, appellee received a letter from appellants' lawyers to the effect that as there has been an unreasonable delay since September 15, 1924, in the completion of the option agreement, they were directed to return the $1,000 paid on August 13, 1924, and telling him to consider the matter closed.

After further correspondence, and appellants declining to close the deal, this action for specific performance followed, resulting in the foregoing findings, conclusions and judgment for specific performance in favor of appellee.

It is the law, as appellant contends, that special findings of fact should not contain mere recitals of evidence nor should they contain conclusions of law. *Stalcup* v. *Dixon* (1893), 136 Ind. 9, 35 N. E. 987; *Johnson* v. *Citizens Trust Co., Rec.* (1922), 78 Ind. App. 487, 136 N. E. 49; *Farmers Trust Co.* v. *Sprowl, Admx.* (1920), 72 Ind. App. 564, 126 N. E. 81. But we do not agree with appellants'. contention that the special findings are objectionable because they contain either evidentiary recitals or conclusions of law. Parts of the special findings complained of are clearly statements of ultimate facts and, as such, are properly included in the findings. So much of the special findings as undertakes to determine the amount that was due from appellee to appellants is but the result of a computation based upon the preceding findings, and, as such, becomes an ultimate fact and not a conclusion of law. The case is readily distinguished, in this regard, from the case of *Smith* v. *Wells* (1919), 72 Ind. App. 29, 122 N. E. 334, 123 N. E. 644, relied on by appellants. In *Baldwin* v. *Heil* (1900), 155 Ind. 682, 58 N. E. 200, the amount due appellant had to be determined by computation, and the court found: "That the amount due Baldwin at that time with 10% interest and attorney's fees was $500." And the court said: "The

finding complained of must be regarded as a finding of fact, and not a conclusion of law. The balance due on the notes at a given date was a fact depending upon the original amount of the notes, the rate of interest, and the sum of the payments. Whether the appellee, Daniel Heil, was liable to pay the amount found due was a conclusion of law."

Appellants next contend that whatever may be concluded concerning the deals between appellee and appellant George Walcis, it is clear that, in the absence of a finding of fact sufficient to bind appellant Zuzi Walcis, a decree of specific performance may not be entered against appellant George for the reason that he cannot convey an undivided or segregated portion of his tenancy by entirety. Appellants state the law, if there were an absence of finding of fact sufficient to bind appellant Zuzi Walcis, but we do not so interpret the findings. Both the lease, with its option to purchase executed on March 24, 1923, and the agreement of August 13, 1924, which was supplementary to the original agreement, not independent thereof, and which must be construed therewith, together with a breach of the contract by appellants was sufficient to bind both of them in this action.

Appellants say that it affirmatively appears that appellee has an adequate remedy at law by a suit for damages, calling attention to the fact that appellee had entered into a contract of sale with the Calumet Tobacco Company, and that the difference between what appellee was to pay for the property and the amount which he was to receive from his purchaser would fix the measure of damages. But there is nothing in the special findings to show upon what terms appellee had agreed to sell the property involved to the Calumet Tobacco Company. It does not appear as to whether the parties have continued to treat the contract

as still in effect, nor that appellee had agreed to sell for a definite amount under such circumstances that his damages could be ascertained. Further, conceding that there was a valid and enforceable contract between appellee and the Calumet Tobacco Company, it does not appear by the special findings that the amount of damages suffered by the Calumet Tobacco Company, and which it would have a right to recover against appellee would be ascertainable under the facts as found. Even if such damages were ascertainable, still it is not the law that, because of such fact, resort must be had to the remedy at law rather than to equity for the enforcement of specific performance. As is stated in 36 Cyc 552: "It is as much a matter of course for courts of equity to decree a specific performance of a contract for the conveyance of real estate which is in its nature unobjectionable as it is for courts of law to give damages for its breach." To the same effect see, 25 R. C. L. 271; *Clark* v. *Cagle* (1914), 141 Ga. 703, 82 S. E. 21, L. R. A. 1915A 317.

By the instrument of August 13, 1924, appellee exercised the option which he had taken along with the lease executed on March 24, 1923, it being provided in such instrument that final payment should be made when the title was found merchantable and a warranty deed delivered, with a further provision that if the title to the property was merchantable, the deal should be completed on or before Sept. 15, 1924. But, as appears by the findings, the title was found not to be merchantable so that the deal could be closed on September 15, 1924, and it appears that appellee, in order to complete the deal, not only with appellants, but with the Calumet Tobacco Company as well, through the direction of the attorneys of the Calumet company, took divers steps by way of completing the title and making it merchantable and, to this end, had repeated

conferences with appellant George Walcis. Under such circumstances, it cannot be said that time was of the essence of contract. Clearly, it was contemplated that if the title was not merchantable, a reasonable time after September 15 would be allowed to make it so. Both parties acted upon this construction of the con-tract, meeting from time to time as aforesaid and dis-cussing the merchantability of the title. This fact, taken along with the fact that appellee's lease did not expire until March 31, 1926, and that he had all of the time covered by his lease within which to exercise his option, we have to say that there was no unreasonable delay that justified a forfeiture of appellee's right to exercise his option and complete the purchase of the property. Appellants having refused to perform their contract, there was no necessity of a tender of the amount due them after such refusal. Other questions are presented by appellants, but we regard them as in-substantial, and we do not discuss them. The court did not err in its conclusions of law.

The judgment is affirmed.

Dausman, J., absent.