Mrs. R. M. COLLIGAN, Appellant,

v.

Joseph L. SMITH, Appellee.

No. 16385.

Court of Civil Appeals of Texas.

Fort Worth.

March 22, 1963.

Rehearing Denied April 19, 1963.

Bracewell, Reynolds & Patterson, and Harold R. DeMoss, Jr., Houston, for appellant.

J. Edwin Swift, Jr., and Ernest S. Fellbaum, Houston, for appellee.

LANGDON, Justice.

This suit was brought by appellant, Mrs. R. M. Colligan, a feme sole, seeking a declaratory judgment declaring void and unenforceable a written agreement which she had entered into with appellee, Joseph L. Smith, involving an option to purchase land owned by her. Appellant sought judgment on the grounds of no consideration or a failure of consideration, that such agreement was too vague and indefinite to be enforceable, and on the grounds that the appellee had failed to comply with the terms and provisions of the agreement itself. The trial court, upon hearing the case without a jury, held that there was valid consideration

supporting the agreement, that it was not too vague and indefinite to be enforceable and therefore was valid and binding, and entered judgment for the appellee. Findings and conclusions were filed. We affirm.

The court found in effect that the appellant, the owner in fee simple of the land involved, voluntarily entered into and signed an agreement with the appellee on October 6, 1960, giving him an option to purchase under the terms and conditions therein stated. That no false, misleading or objectionable statements or representations were made by the appellee which induced or contributed to cause appellant to execute the agreement and that she substantially understood its terms and conditions, effect and meaning. That consideration was the mutual promises therein made, and the substantial work, expenditure of money and obligation to pay expenses and attorneys' fees incurred by the appellee, in the performance of such contract from the time it was signed on October 6, 1960, to the date this suit was filed on February 2, 1961. That until his rights thereunder were questioned, the appellee complied with and fulfilled the obligations imposed on him by the agreement. That upon institution of this suit by appellant the appellee was justified in not continuing further performance. That the fair market value of the land with the restrictions was $75,000.00 and without the restrictions the value was $150,000.00. The court further found that the appellant was induced to object to the agreement and to file this suit by E. J. Stolz who advanced money in payment of the expenses and attorneys' fees and that the latter's offer to purchase the property was subject to removal of the restrictions.

Appellant challenges these findings and conclusions, contending that the contract was void and unenforceable for (1) lack or failure of consideration, (2) indefiniteness and that the contract terminated because appellant failed to comply with its terms. Points 4 through 11 are based on no evidence or wholly insufficient evidence to support the court's findings.

The portion of the option agreement in dispute is contained in paragraph two thereof which reads, "2. The option herewith granted shall run from the period commencing with the date hereof and ending ninety (90) days after the final determination by proper court action to exempt said part of Tract No. Two (2), described above, from the residential-only restrictions existing in Post Oak Gardens Subdivision. It is mutually understood that Purchaser shall have a reasonable length of time from the date hereof to retain legal counsel at his expense to determine if said part of Tract No. Two (2) in Post Oak Gardens Subdivision is exempt from said residential-only restrictions. Owner shall be notified in writing as soon as legal counsel is retained by Purchaser. The entire cost of legal fees and court costs shall be borne solely by Purchaser. This obligation assumed by Purchaser for legal fees and court costs in connection with the aforesaid determination is additional consideration for the option period. Said period commencing with the date hereof and ending ninety (90) days after the final determination by proper court action as hereinabove set out is hereinafter called the 'option period.'"

The record reflects that the appellant was furnished the names of the attorneys who would handle the litigation at the time the contract was executed and this was later confirmed by letter dated January 31, 1961. This feature of the contract is not an issue.

The primary question of law for the court to consider under the record before it is whether the option contract is valid and enforceable or void and unenforceable for lack or failure of consideration or for indefiniteness.

In considering the enforceability of such contracts and particularly an option contract as is here involved, it is helpful to read what was aptly said by our Supreme Court in Corsicana Petroleum Co. v. Owens, 110 Tex. 568, 571, 222 S.W. 154, 155, speaking through Chief Justice Phillips: "But the grantors, for an independent considera-

tion, by their contract agreed that the grantee should have that option. The unilateral character of the agreement for the option, is of no consequence. A contract for the grant of an option is necessarily unilateral. An option is granted for the purpose of enabling the grantee to exercise the particular right or not, as he may elect. The value of it consists in that privilege. Owners of property have the unquestioned power to grant such rights with respect to it. They are free to validly make such contracts. When so made, it is the duty of courts to uphold and enforce them. A contract for the grant of an option, limited to a definite time, is therefore valid and enforcible if supported by an independent consideration. * * * In many valid contracts the promise is only on one side. They are unilateral. As to them, the inquiry is not whether they are of that character, but whether they are supported by a consideration."

The record in this case reflects that the property in question owned by Mrs. R. M. Colligan, the appellant, would be far more valuable with the restrictions removed, perhaps double the value of the property with the restrictions.

Mrs. Colligan testified that in 1955 she instituted a suit in an attempt to remove the restrictions on this same property and participated throughout the trial of the case. Judgment was entered by the trial court on April 3, 1957, by which the property was freed from the restrictions. The Waco Court of Civil Appeals affirmed the trial court on November 21, 1957, and denied the motion for rehearing on December 12, 1957 (Cowling v. Colligan, 307 S.W.2d 841). On April 30, 1958, the Texas Supreme Court reversed the Court of Civil Appeals and the District Court and denied the motion for rehearing on May 28, 1958 (158 Tex. 458, 312 S.W.2d 943).

Thus Mrs. Colligan in her previous unsuccessful effort to remove the restrictions on her property had expended considerable money for attorneys' fees and court costs and was involved in litigation from early 1955 to May 28, 1958, a period of approximately 3 years or more. The evidence reflects that Mrs. Colligan could not afford another such suit or else was unwilling to risk her money on further litigation. This background will explain Mrs. Colligan's testimony to the effect that until the appellee's representative contacted her about the option in question she had made up her mind to do nothing further and wait until 1975 when the restrictions ran out so she could then get what the property would be worth.

Following this initial contact the parties had discussions concerning the option agreement for a period of some fourteen days. During this time proposed drafts were left with the appellant who had the time and the privilege of contacting her attorney or other advisor. Several changes were suggested and made and finally an agreement satisfactory to both parties was arrived at and executed by them on October 6, 1960.

Thereafter the record reflects that the appellee in performing under the terms of the agreement, employed attorneys to handle the matter and obligated himself to pay them a minimum fee of $2,500.00. He had paid $350.00 on this fee and further obligated himself to pay the attorneys a bonus of $12,500.00 in event they were successful in removing the restrictions. In addition appellee had spent approximately 100 hours in taking photographs, in investigating changed conditions and activities in the area involved, in contacting various residents thereof and in reviewing the record of the previous restrictions suit filed by the appellant, all toward the end of obtaining sufficient information upon which to base the suit required by the agreement. It was contemplated that the suit would be filed in January, 1961.

Then according to the record the appellee was contacted by a Mr. Wright, a representative of the appellant, around the first of January, 1961. He suggested that the appellant was unhappy with the option agreement and questioned its validity. Until

this contact the appellee had received no word or inquiry of any kind from the appellant since the signing of the option agreement on October 6, 1960. The instant suit was thereafter filed by the appellant on February 2, 1961, about 118 days after execution of the option agreement.

Let us now examine the contentions of the appellant in the light of this record.

■ The points based on failure or lack of consideration are not very persuasive as against the evidence that until a representative of the appellee contacted her the appellant had decided to wait some 15 years (until 1975) for the restrictions to run out. The appellee agreed to bear the expense of litigation and perhaps cut 10 to 12 years off of her waiting period if he were successful. She knew from personal experience that such a suit would be expensive and require three years or more of litigation. The record discloses that pursuant to his obligation under the agreement the appellee expended his time and money and would have continued to do so had this suit not been filed. Certainly there was no failure or lack of consideration under such circumstances. The contentions that the appellee had not complied with or fulfilled the obligations imposed on him by the agreement are not valid and find no support in the record.

■ On the question of whether or not the appellee was justified in not continuing further performance after institution of this suit, it should be kept in mind that Mrs. Colligan, the appellant, would of necessity have to be party plaintiff in any suit filed by the appellee to remove the restrictions. Without her wholehearted cooperation it is obvious that such a suit would be a futile gesture. Surely the appellee could not be expected to expend his time and money in performing under the very same contract which the appellant by this suit seeks to declare invalid. Mildly speaking it is obvious that by filing this suit the appellant placed the appellee in an untenable position to proceed with the suit contemplated by their option agreement.

■ It is a general rule that an optionor who has given the right to purchase property within a specified time may not commit any act or omit to perform any duty calculated to cause the optionee any delay in exercising the right. 157 A.L.R. 1311.

■ The failure of an optionee to comply strictly with terms or conditions of an option will be excused when such failure is brought about by the conduct of the optionor. Jones v. Gibbs, 133 Tex. 627, 130 S.W.2d 265, 131 S.W.2d 957.

■ The appellant contends that the option agreement is lacking in mutuality and is so vague, indefinite and uncertain as to be unenforceable. Presumably she has reference to mutuality of obligation. The contract under consideration here is an option, unilateral in nature, and its validity is not dependent upon mutuality of obligations. See Corbin on Contracts, Vol. 1, §§ 21 and 152; 12 Am.Jur., pp. 509, 513.

In Armstrong Paint & Varnish Works v. Continental Can Co., 301 Ill. 102, 133 N.E. 711, 714, the court held: " * * * where there is any other consideration for the contract, mutuality of obligation is not essential. If mutuality, in a broad sense, were held to be an essential element in every valid contract to the extent that both contracting parties could sue on it, there could be no such thing as a valid unilateral or option contract." This holding was cited with approval by the Texas Supreme Court in Pace Corporation v. Jackson, 155 Tex. 179, 284 S.W.2d 340.

■ In determining whether the option agreement is too vague and indefinite to be enforceable the courts have held that reasonable construction given a contract by the parties themselves before the controversy arose will be given effect by the court. The basis of such holdings is that the parties themselves were in the best position to know what was intended by the language utilized

by them. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391; Redding Foods, Inc. v. Berry, Tex.Civ.App., 361 S.W.2d 467, and cases cited therein. It is apparent from the record in this case that the parties to this suit contemplated that following an investigation to determine conditions and changes in the area involved, a suit based upon the information obtained would be filed in the district court and diligently prosecuted to conclusion or final determination. Certainly it was not contemplated by the parties that this could be accomplished during the period October 6, 1960, the date the agreement was signed, and February 2, 1961, the date this suit was filed. It would be inconceivable to expect performance under this agreement and exercise of the option within a period of 118 days.

In examining the option period which appellant complains of it must be kept in mind that no one could definitely ascertain the time required to litigate the restriction suit through the courts to final determination. There was some evidence to the effect that it might be as long as two years after filing before final judgment could be obtained in the trial court and Mrs. Colligan knew from her previous experience that another 18 months or two years would be required in the appellate courts. Thus being unable to fix any time for litigation with any degree of certainty the parties fixed a definite period of 90 days after the final determination or judgment of the court. Under the facts of this case and considering the objective sought by the parties the option period could not have been more definite.

Persons are ordinarily held bound by what they write and sign. This agreement was deliberately entered into after numerous conferences between the parties and became a binding contract from the moment of its acceptance and work was commenced and done under it and money expended. Such action on the part of the appelleee was necessarily contemplated by the terms of the option agreement.

The uncertainty as to time ordinarily becomes immaterial in view of such performance. It has been held that a contract may be so uncertain that it cannot be specifically enforced in equity, but may nevertheless be the basis for a remedy at law in favor of a party who has wholly or partially performed under it.

In Geo. Finberg Co. v. Jamison, Tex.Civ. App., 260 S.W. 884, the court held: "It is to be presumed that parties signing an instrument do so for a definite purpose, and that the performance of the obligation of the contract is to take place within some reasonable time. In the absence of a stipulation fixing the time of performance, the law fixes a reasonable time, and in ascertaining what is a reasonable time the circumstances of the particular case, including conversation between parties, may be introduced in evidence. (Citations omitted.)

"As to what constitutes reasonable time for the performance of a contract is a mixed question of law and fact, when no time is fixed for its performance. Potter County v. Boesen (Tex.Civ.App.) 191 S.W. 787." See also 13 Tex.Jur.2d, pp. 161, 165, §§ 37–39 and cases cited.

In Hall, et al., v. Hall, 158 Tex. 95, 308 S.W.2d 12, 16, the Supreme Court of Texas speaking through Justice Garwood held: "When the parties omit an express stipulation as to time, it is in accord with human experience and accepted standards of law for us to assume that they meant whatever term of days or years might be reasonable in the light of the circumstances before them at the date of the contract."

In Cheek v. Metzer, 116 Tex. 356, 291 S.W. 860, 863, it was said: "What is a reasonable time * * * must be determined by the circumstances in evidence surrounding the situation of the parties and the subject-matter under which the contract was executed."

It is not intended by this opinion to recommend the option contract in question as

a model. We are certain that its authors are fully aware of many changes which would materially improve it. We are of the opinion, however, that at the time it was drawn up and signed it represented the wishes of the parties involved and sought to obtain the objectives each had in mind as of that time.

Since this suit is in the nature of a declaratory judgment seeking to declare the agreement in question void and unenforceable and we have concluded that the trial court was correct in holding it to be a valid and enforceable contract, we see no necessity in discussing other points based on no evidence or wholly insufficient evidence to support the court's findings on matters that have no bearing on the validity of the agreement.

Each of the points of error urged by the appellant are overruled and the judgment of the trial court is affirmed.