**TIFFANY DEVELOPMENT CORPORATION, Appellant,**

v.

**John C. CANGELOSI, Sr., et al., Appellees.**

**No. 16366.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Sept. 26, 1974.

Sanford W. Likover, Bellaire, for appellant.

Pollan & Nicholson, John T. Nicholson, Rosenberg, for appellees.

PEDEN, Justice.

Appeal from the granting of a summary judgment in favor of the defendants, owners of a 24.189 acre tract of land. Plaintiff, Tiffany Development Corp., held an option to buy the tract and brought this suit to reform the written option agreements (the original one had been extended several times) "to permit Plaintiff adequate time to close their financing agreements upon the Defendants' tender of marketable title" and for general relief.

Plaintiff-appellant alleged in its pleadings that it gave the defendants "notice of exercise of said option . . . and the parties agreed to close the sale on or about May 15, 1973 but that the defendants were unable to deliver marketable title at that time; that plaintiffs were ready, willing and able to close the transaction if marketable title had been tendered. That by agreement the closing had been postponed several times because of the defendants' inability to deliver marketable title, and changing market conditions caused the plaintiff to lose its loan commitment; the plaintiff is seeking a new loan, but the defendants have given notice that they are cancelling the option. Plaintiff asserts in its pleadings that it has spent substantial sums in preparing for the purchase, that the defendants should not benefit from their inability to deliver marketable title and that plaintiffs will be irreparably damaged and have no adequate remedy at law.

The parties agree that the original option agreement was in the form of a letter dated December 6, 1971 and signed by the defendants. It was addressed to Mr. David H. Borger as trustee and stated:

"We are the owners of the above captioned tract of land.

"It is our understanding that you, as Trustee, are interested in acquiring this property at our asking price of $12,000.-00 per acre. In your opinion it will take ninety days or more to do the necessary work to enable you to purchase the land.

"This work includes Preliminary Layout for submittal to the Planning Commission of the city of Missouri City and for Feasibility Study and MAI Appraisal for financing. Also it will be necessary to determine that all utilities such as water and sewerage, etc. are in sufficient quantity to service this property for a quality strip shopping center, town-houses and/or apartments.

"In consideration for your efforts in the above, we hereby grant to you the exclusive right and privilege to purchase this property for a period of three months from this date which will expire on March 6, 1972; should any additional time be required beyond the expiration

date, we will grant you three additional months upon the payment of $1,000.00 per month, payable in advance, with these amounts being applied against the total purchase price.

"We will agree to furnish you a current survey of the property and a Title Policy, at our expense, plus the deed to you, tax certificates, and to prorate the taxes to the date of closing, with the transaction to be closed by the Rosenberg Abstract Company, Rosenberg, Texas. Should another Title Company issue the Title Policy, it is understood that you will pay this expense. Should Fifth Street Road and Martin Lane be widened before the transaction is closed, we agree to cooperate with the proper authorities in connection with such widening."

The defendants' motion for summary judgment alleged that the option agreement on which plaintiff's suit was based provided that plaintiffs were to exercise it by making payment for the land on or before a certain date and that at plaintiff's request the time was extended at least three times to allow plaintiffs to tender such payment, the last extension ending on October 1, 1973, more than a year beyond the original termination date. That plaintiff has never tendered the purchase price; time was of the essence of the option, and it has long since terminated. That the court has neither authority nor jurisdiction to reform the instruments in question to give the optionee more time to obtain purchase money.

Rule 166–A, Texas Rules of Civil Procedure, provides in § (e): "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . ."

Defendants-appellees filed, in support of their motion for summary judgment, a four-page affidavit executed by the attorney who represented them in negotiating the option and in extending it. Not all of his statements comply with the quoted provisions of Rule 166–A, § (e), and the same may be said for the plaintiff's affidavits, but the contents of the written option and its extensions are not in dispute.

It is clear that the specified time, as extended, has passed and that the purchase price has not been paid by Tiffany Development Corp. In an affidavit executed by the president of Tiffany Development he made a passing allegation that his company had somehow exercised the option by asserting: "That Tiffany Development Corporation has expended almost $20,000 after the exercise of its option for a conditional loan commitment" and engineering studies but defendants have defaulted in delivering title as required under the contract; that at the time of the original proposed closing, Tiffany Development "had a land loan which would have completed the closings" but defects appeared in the defendants' title, and the resulting delay in clearing the defects has resulted in loss of the loan. That one defect, an encroachment, is still not cleared, but that Tiffany has since obtained a conditional commitment.

Appellant alleged in its pleadings that it had been ready, willing and able to take up the option but that appellees had been unable to deliver marketable title. The pleadings of the parties do not constitute summary judgment evidence. Hidalgo v. Surety Savings & Loan Assoc., 462 S.W.2d 540 (Tex.1971).

Each of the land owners executed an affidavit stating that "neither the plaintiff nor its assignors have ever tendered the purchase money in the agreement but have only requested more time. . ."

Appellees' summary judgment proof shows that on May 31, 1973 the attorney for Tiffany Development, as its president, wrote a letter to the owners of the land saying Tiffany Development "agreed" to a postponement of the closing of the transaction for a period of 45 days to give the

land owners time to resolve the problem of encroachment by the neighboring church. The attorney for the land owners replied by letter dated July 10, 1973 stating that there is no encroachment problem, that the church acknowledges that the scattered pieces of asphalt were located there through error and will be removed; that the sellers are ready to close and consider the 45 day extension mentioned in Tiffany's letter of May 31 to expire on Monday, July 16, 1973.

On August 30, 1973 the land owners notified the optionee by mail that they did not accept the terms of its offer to extend the closing date to about October 1, 1973, but offered to entertain a proposal to renew the option not past October 1, 1973 if the proposal is in definite terms, etc. The letter concluded:

"This is definite and if we do not hear from you within seven (7) days from the date of this letter, we will assume that you are not willing to such a proposal and in such event this is notice to you and your client that the option is considered cancelled and will not be renewed or extended in any way."

The plaintiff's original petition was filed on September 18, 1973.

The affidavit filed in support of the defendants' motion for summary judgment by Mr. R. W. Lindsey, the attorney who represented them in their negotiations with the optionees, does not state that it is made on personal knowledge, but it is clear that the statements to which we will give credence were made on that basis. It contains a statement that all parties intended that time was of the essence in the option; this appears to be a conclusion on his part.

Appellant contends that under the provisions in the option the sellers agreed to furnish marketable title, and the sellers do not disagree. The option provided that sellers "will agree to furnish you a current survey of the property and a Title Policy . . . plus the deed to you . . .

with the transaction to be closed by the Rosenberg Abstract Company . . . Should another Title Company issue the Title Policy, it is understood that you will pay this expense. . . ."

In the absence of any provision to the contrary, the law implies, at least with respect to executory contracts for the sale of land, that the seller of land will furnish the buyer good and merchantable title. Lambert v. Taylor Telephone Co-Operative, 276 S.W.2d 929 (Tex.Civ.App.1955, no writ); Busby v. Smith, 53 S.W.2d 138 (Tex.Civ.App.1932, reversed on other grounds, 87 S.W.2d 703). See also cases cited at 57 A.L.R. 1268.

The only summary judgment evidence concerning a title company's willingness to furnish a title policy is appellees' affidavit that the optionee received a 1971 title report from Capital Title Co. of Ft. Bend County before the option was granted. A copy of it is attached to the affidavit. It does not specifically mention encroachment by the church, but it contains this exception: "subject to claims of present occupants; discrepancies in area and boundaries . . ."

There is nothing in the record that would show that Tiffany Development would be willing to accept a title policy subject to the rights of parties in possession and obviously it was unwilling to waive inspection of the property. Rule 4 of the Basic Manual of Rules, Rates and Forms promulgated by the Board of Insurance Commissioners as set out in Halvorson v. National Title and Abstract Co., 391 S.W.2d 112 at 114 (Tex.Civ.App.1965, no writ), provides that a title policy may make a general exception as to rights of parties in possession only where the insured waives inspection and is satisfied to accept the policy subject to the rights of parties in possession.

The fact issue as to encroachment has not been resolved. The defendants' affidavit acknowledges that some asphalt from

the driveway of the church was left on the subject property but says the church removed them by July 10, 1973. Plaintiff's affidavit stated that the paving encroachment still existed when inspected on March 19, 1974; that it is some three feet wide and over a hundred and fifty feet long. Defendants allege that the church acknowledged the locations of the common lines, but this is hearsay.

■ Appellant's pleadings seek equitable reformation of the contract to allow them additional time to negotiate a loan after the title (encroachment) problem has been cleared. In the absence of any contention that the option did not express the true intent of the parties, reformation does not seem to be the proper remedy. However, this is not a case in which a motion for summary judgment may be treated as equivalent to a general demurrer to the petition; the facts alleged by the plaintiff do not establish the absence of a right of action or an insuperable barrier to a right of recovery. See Swilley v. Hughes, 488 S. W.2d 64 (Tex.1972).

■■ It was pointed out in Colligan v. Smith, 366 S.W.2d 816 (Tex.Civ.App.1963, writ ref. n. r. e.), 58 Tex.Jur.2d 274:

"It is a general rule that an optionor who has given the right to purchase property within a specified time may not commit any act or omit to perform any duty calculated to cause the optionee any delay in exercising the right. 157 A.L. R. 1311.

"The failure of an optionee to comply strictly with terms or conditions of an option will be excused when such failure is brought about by the conduct of the optionor. Jones v. Gibbs, 133 Tex. 627, 130 S.W.2d 265, 131 S.W.2d 957."

It is not clear what Tiffany had to do to exercise the option. Neither the original option letter of December 6, 1971 nor any of the subsequent extensions required that the purchase money, or tender of it, must accompany the notice of election to exer-cise the option. The summary judgment proof does not establish that the appellant did not give notice of its election to exercise the option.

In Walcis v. Kozacik, 86 Ind.App. 484, 156 N.E. 589 (1927) the court held that a four-months' delay on the part of the purchaser in completing the transaction was excused where the title was found not to be merchantable and various acts, including conferences of the parties, became necessary to make it so. In that case the option agreement had provided for one month for completion of the transaction "if title to said property is merchantable." 157 A.L. R. 1318.

■ Our Supreme Court quoted with approval in Womack v. Allstate Insurance Co., 156 Tex. 467, 296 S.W.2d 233 (1956) this statement from Rossiter v. Bogel, 2 Cir., 134 F.2d 908: "where facts appear in affidavits upon motion for a summary judgment which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of a final judgment."

■ Although the plaintiff has 1) neither pleaded nor proved that the option did not express the parties' intent, 2) has pleaded no basis for granting its prayer that it be given whatever time it requires to obtain financing and 3) has not shown that it has made the stipulated payments, the summary judgment evidence does not foreclose the possibility that, under its prayer for general relief, the plaintiff might show itself entitled to a reasonable time to complete the transaction and to make the required payments after the defendants have cured the title defect of encroachment, if it exists.

We are unable to say that the defendants have shown that there is no genuine issue as to any material fact and that the defendants are entitled to a judgment as a matter of law.

Reversed and remanded.