### Seyed Hassan MOOSAVIDEEN, Appellant,

v.

John Travis GARRETT; Lillian Marian Foote Tigard; Lucy Lurline Foote McKinstry; Joseph Garrett Foote; Mary Josephine Foote Endlich; John G. Meador Jr.; Barbara Gene Meador; Mary Francis Meador Simpson; Danna Mahoney Meador; Mary R. Meador Crawford; Glenn Meador Jr.; Sara E. Meador; and Richard L. Doehring, Trustee of the 4 Testamentary Trusts created under the Last Will and Testament of William Mosely Garrett, Deceased, Appellees.

John Travis Garrett; Lillian Marian Foote Tigard; Lucy Lurline Foote McKinstry; Joseph Garrett Foote; Mary Josephine Foote Endlich; John G. Meador Jr.; Barbara Gene Meador; Mary Francis Meador Simpson; Dan-

na Mahoney Meador; Mary R. Meador Crawford; Glenn Meador Jr.; Sara E. Meador; and Richard L. Doehring, Trustee of the 4 Testamentary Trusts created under the Last Will and Testament of William Mosely Garrett, Deceased, Appellants,

v.

Seyed Hassan Moosavideen, Appellant.

No. 01–06–00002–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 20, 2008.

Rehearing Overruled April 7, 2009.

J. Woodfin Jones, Alexander Dubose Jones & Townsend LLP, Austin, TX, Kevin H. Dubose, Alexander Dubose Jones & Townsend LLP, Houston, TX, for Appellants.

David W. Holman, The Holman Law Firm, P.C., Kathleen Cynthia Pickett, Doyle, Restrepo, Harvin & Robbins, LLP, Houston, TX, for Appellees.

Panel consists of Justices NUCHIA, JENNINGS, and BLAND.

## OPINION

SAM NUCHIA, Justice.

We deny appellees' motion for rehearing. However, we withdraw our opinion and judgment of July 26, 2007 and issue this opinion in their stead.

The issue presented by this appeal is whether a lessee validly exercised a purchase option before being notified by the lessor that the lessee was in default on the lease. We also consider whether a lessee can validly exercise a purchase option despite being in default of the lease. We hold that (1) the lessee validly exercised the purchase option before being notified that he was in default on the lease, and (2) the lessee could exercise the purchase option anytime before the contract terminated because the lease did not contain language in the option clause conditioning its exercise on the lessee's performance of the terms of the lease. Accordingly, we reverse and render in part and reverse and remand in part.

## BACKGROUND

### The 1928 lease

In 1928, Lucy G. Travis, as lessor, and Edwin H. Wilder, as lessee, entered into a 99–year lease of a tract of property located in Harris County, Texas. The lease was freely assignable by either party, and its terms are binding upon the heirs, legal representatives, and assigns of the original parties. Two terms of the lease are relevant to the case before the Court.

Article XV of the lease, hereinafter referred to as the "purchase option," provides as follows:

In consideration of the amount of the rental payments hereunder, paid and to be paid, and of the other valuable considerations inuring to the benefit of the LESSOR hereunder, the LESSOR hereby gives and grants to the LESSEE, and LESSEE shall have an optional right at any time within a period of the term of this lease, to purchase the interest of Lessor in and to the demised premises described in ARTICLE 3 hereof, as follows

At and for an agreed purchase price of FIFTY THOUSAND DOLLARS ($50,000.00) to be paid either in cash, or one-half cash, and balance in five (5) equal annual payments, with interest at seven percent (7%) per annum, payable as it accrues, with Vendor's Lien reserved to secure payment.

If, and when LESSEE notifies the LESSOR, of his election to exercise said option to purchase and demonstrates his readiness to pay the amount specified above, LESSOR binds and obligates herself to forthwith execute and deliver to LESSEE a conveyance of her interest in the demised premises and all rights incident thereto, with covenants of general warranty, conveying her said interest and title to said premises free and clear of all encumbrances, judgments, or other liens, subject only to this present lease and anyone claiming hereunder. After receipt of notice of such election to purchase, the LESSOR agrees to promptly furnish LESSEE a complete Abstract of Title to the demised premises so that he may have the title examined before the deed is executed. If and when said option is exercised and the purchase price paid, all future rentals which otherwise would become due under this lease shall cease and the

LESSEE shall be under no obligation to the LESSOR for anything accruing hereunder from and after the date of the consummation of said sale.

The 1927 lease also contained the following language in Article X:

At no time during the life of this contract shall LESSEE permit to be carried on in the demised premises, or any part thereof, any kind or character of business whatsoever which is not permitted by law; and LESSEE agrees at all times to perform any and all lawful requirements in regard to the use and occupancy of the demised premises and improvements, as well as to the use and occupancy of the streets and sidewalks adjacent thereto, and agrees that he shall at all times conform to such requirements and perform the same in such manner as to relieve the LESSOR and the demised premises from any liability therefor. The LESSEE shall have the right to use the demised property during the lease term for any lawful purposes.

Finally, the lease contained the following provision, whereby the parties were obliged to notify one another of any change of address:

All notice and delivery of papers herein mentioned and required to be given shall be given in writing by registered mail properly addressed to the address of the party for whom it is intended, and a registered receipt from the postal authorities of the United States showing the mailing to such party by registered mail at the proper address, together with a copy of the notice sent in the hands of the sending party, shall conclusively establish the giving of such notice. . . .

The present address of Miss Luch G. Travis, is 4103 Rossmoyne, Houston,

Texas, and the present address of the lessee, Edwin H. Wilder, is 1204 Milam St., Houston, Texas, to which addresses, until changed as hereinafter provided, all notices required shall be mailed.

In the event the address of any party hereto is changed or desired to be changed from those stated in the preceding paragraph ... it shall be the duty of the party making or desiring to make such change to notify the other party hereto ... giving such notice his new address, which notice shall likewise be given by registered mail.

## The Subsequent History of the Lease

Wilder, the original lessee, assigned the lease to Scott Shambaugh in 1929. In 1930, Shambaugh assigned the lease to The Texas Company ("Texaco"). Texaco operated a service station on the property for almost 50 years. The undisputed evidence shows that during the time the service station was in operation there were no environmental regulations to report or remediate contamination of the soil. The lease remained with Texaco[1] until 1989, when it was assigned to Hamid Liaghat and Hassan Naghavi.

## Moosavideen Obtains the Lease and Attempts to Exercise Purchase Option

On November 9, 2000, shortly before he acquired the lease, Moosavideen sent a letter to three of the original lessor's heirs—Lucy Foote McKinstry, John Travis Garrett, and John G. Meador, Jr.—expressing his interest in acquiring the lease for the purpose of exercising the purchase option. He received no response. Three months later, on January 22, 2001, Moosavideen acquired the lease from Liaghat and Naghavi.

Moosavideen was informed by his predecessors that Lucy G. Travis, the original lessor, had four heirs to whom they had forwarded rent payments: (1) Lucy Foote McKinstry, (2) John Travis Garrett, (3) Bank One Texas, N.A., as guardian of the estate of Mildred Webster Garrett, and (4) John G. Meador. On May 18, 2001, Moosavideen sent notice to these four heirs that he intended to exercise the option to purchase.

Having received no response, on August 6, 2001, Moosavideen again notified these four heirs that he intended to exercise the option contract in the lease. Moosavideen also included a warranty deed he had obtained and requested that the heirs correct any error in the listing of the owners and their percentage of ownership. The deed listed 15 owners and included signature blocks for each. Again, the heirs did not respond to Moosavideen's request to exercise the option.

## Moosavideen Files Suit and Sends Notice to More Heirs

On November 1, 2001, Moosavideen filed suit, seeking a declaratory judgment that he had validly exercised the option contained in the lease and was entitled to a deed transferring the lease property to him, and for specific performance of the option. During the course of discovery, Moosavideen determined the names of more heirs and provided notice to them of his intent to exercise the option. However, Moosavideen did not provide notice to the Estate of William Mosely Garrett[2] until October 17, 2002.

1. Texaco assigned the lease to Texaco Refining & Marketing, Inc. in 1948, and Texaco Refining & Marketing, Inc. assigned the lease to Star Enterprise in 1989. These entities are referred to collectively as "Texaco" in this opinion.

2. The record shows that Moosavideen had previously given notice to the Garrett estate through Bank One Texas, N.A. as guardian of the estate or Mildred Webster Garrett, as Moosavideen claims he had been instructed to do by attorneys for the Garrett estate. How-

### The Heirs give Moosavideen Notice of Default

On May 15, 2002—almost one year after Moosavideen gave notice of his intent to exercise the purchase option to the four heirs for whom he had addresses—and again on September 13, 2002, the heirs notified Moosavideen that he was in default of Article X of the lease. Specifically, their letter to him provided

> Pursuant to Article X of the Lease, the Lessee is required to perform any and all lawful requirements in regard to the use and occupancy of the Lease Property and improvement and to at all times conform to such requirements and perform the same in such matter as to relieve the undersigned Lessor from any liability therefore [sic]. You have subjected the Lessor and Lease premises to liability as a result of the use and occupancy of the Lease Property as a service station, in a manner inconsistent with applicable environmental laws/regulations.

The default provision of the lease provides as follows:

> If default be made by LESSEE in the performance of any one or more of the covenants contained in this lease (other than the covenants to pay rents or other monies . . .) and LESSOR shall, in writing, notify LESSEE . . . of such default or defaults, and if such defaults are not corrected by LESSEE . . . within one hundred and eighty (180) days from the date of said notice, then LESSOR may forthwith declare said lease cancelled in the manner and with the results specified in subdivision (a) next above.

Thus, under the express terms of the lease, Moosavideen had 180 days—until

ever, he did not provide notice to Cameron McCullough, Permanent Administrator of the

November 12, 2002—to cure the claimed default.

### Moosavideen Finally Gives Notice to All Heirs

Moosavideen did not cure the claimed default. Instead, on October 17, 2002, during the "cure period," Moosavideen finally gave notice of his intent to exercise the purchase option to the Estate of William Mosely Garrett, the last remaining heir to whom notice had not been given. In response, the heirs claimed that they were no longer required to transfer the property pursuant to the option because, at the time he gave notice to all heirs, Moosavideen was in noticed, but uncured, default.

### The Trial Court's Ruling

The case proceeded to trial before the court. Most of the evidence was stipulated by the parties, with the exception of testimony from the environmental experts. The trial court made the following findings of fact, which are relevant to this appeal:

16. At all times relevant to this cause (but certainly from 11/09/00) Plaintiff was in material default and breach of the Lease by virtue of the environmental contamination [in violation of Article X of the lease].

17. On 05/15/02 and again on 09/13/02, Defendants notified Plaintiff of his material default/breach under the Lease by virtue of the environmental contamination (collectively the "default notice"), and of their intent to forfeit and cancel the Lease if such default and breach was not cured within 180 days of such default notice, all in accordance with and as was their right under Article V(b) of the Lease.

18. Under Article V(b) of the Lease, Plaintiff had until November 12, 2002 to cure his Lease default and material

Estate of William Mosely Garrett until October 17, 2002.

breach by virtue of the environmental contamination, but failed and refused to do so.

19. The Lease was thereupon validly terminated and canceled by Defendant for duly noticed but uncured material breach, thereby entitling Defendants to immediate possession of the Lease Property.

20. Plaintiff attempted to notify Defendants of his intent to exercise the Lease Purchase Options earlier (by letters dated May 18, 2001, August 6, 2001, August 2, 2002, and October 14, 2002), but such notice was not effective and Plaintiff was already in material breach of Article X of the Lease because of the environmental contamination of which he was aware.

21. On 10/17/02, Plaintiff effectively notified Defendants, the Lessor, of his intent to exercise the Lease Purchase Options ("Notice of intent to exercise Lease Purchase Option"), but Plaintiff was not entitled to exercise the rights and purchase option granted in Article XV of the Lease by virtue of his previously noticed but uncured material breach of Article X of the Lease.

23. The notice of address change provision in Article XIII of the Lease did not apply to any of the Defendants at any time relevant to this case, as none of them changed their addresses.

The following conclusions of law are also relevant to this appeal:

1. Plaintiff was not entitled to exercise the rights and option granted in Article XV of the Lease so long as he was in noticed but uncured material breach and default of the Lease under Article X.

2. Notice of intent to exercise Lease Purchase Option was not effective under the Lease until such notice was received by all of the Defendants.

3. As a matter of law, Plaintiff was at the time he acquired the lessee interest in the Lease, on constructive notice of the Estate of William Mosely Garrett, deceased's undivided 25% lessor ownership of the Lease and of the Lease Property, by virtue of the probate records on file in Cause No. 96649, Harris County Texas, yet he failed to notify the Estate of William Mosely Garrett, deceased of his intent to exercise the Lease Purchase Option until 10/17/02, more than 4 months after Defendants' notice of Lease default and of intent to forfeit the Lease.

5. Plaintiff was in noticed but uncured breach of the Lease at the time he attempted to take advantage of the Lease Purchase Option therein and, therefore, was not entitled to do so.

Based on these findings and conclusions, the trial court awarded the heirs $88,456.16 in damages, plus attorneys fees, for Moosavideen's breach of the lease. The trial court also awarded Moosavideen a $150,268.02 equitable offset against the judgment—an amount equal to the purchase price of the lease, plus taxes Moosavideen paid on the leased property.

## WAS PURCHASE OPTION VALIDLY EXERCISED?

In issue one, Moosavideen contends the trial court erred in concluding that he was barred from exercising the purchase option. In issue two, Moosavideen contends the heirs did not validly terminate the lease before he exercised the option. Specifically, Moosavideen claims that (1) he validly exercised the option on May 18, 2001, when he gave notice of his intent to exercise the option to the four heirs who had been accepting rental payments, or (2) he validly exercised the option on August 2, 2002, when he gave notice to all of the heirs except the estate of William Mosely Garrett, because he had given effective notice to the Garrett estate by notifying

Bank One, as he had been instructed by an attorney for the estate, or (3) he validly exercised the option on October 14, 2002, when he finally gave notice to all heirs, including the estate of William Mosely Garrett.

### Option Exercised on May 18, 2001

■ We first address Moosavideen's argument that he validly exercised the option on May 18, 2001, almost one year before he was placed in default by the heirs. Specifically, Moosavideen argues that, by giving notice to the only four heirs for whom he had actual knowledge of addresses, he had complied with the terms of the lease.

■ In pertinent part, Article XIII of the lease provides as follows:

The present address of Miss Lucy G. Travis, is 4103 Rossmoyne, Houston, Texas, and the present address of the lessee, Edwin H. Wilder, is 1204 Milam St., Houston, Texas to which addresses until changed as hereinafter provided, all notices required shall be mailed.

**In the event the address of any party hereto is changed or desired to be changed *from those stated in the preceding paragraph* ... it shall be the duty of the party making or desiring to make such change to notify the other party hereto ...** giving in such notice his new address, which notice shall likewise be given by registered mail. (Emphasis added).

Nevertheless, the trial court found that "[t]he notice of address change provision in Article XIII of the Lease did not apply to any of [the heirs] at any time relevant to this case, as none of them changed their addresses." The trial court further found that Moosavideen's "[n]otice of intent to exercise Lease Purchase Option was not effective under the Lease until such notice was received by all of the Defendants."

Moosavideen argues that, under the express terms of the lease, lessees who wished to changed their address from that given in the lease—4103 Rossmoyne—were required to give him notice of the change; he also argues that the heirs stipulated that they had not provided such notice. We agree.

Under the lease, any lessor wishing to change his address for receiving notice from 4103 Rossmoyne was required to notify the lessee notice of the change by registered mail. The trial court erroneously concluded that Article XIII did not apply because none of the heirs had changed his address. It is irrelevant that the heirs had not changed the addresses at which they resided. At issue is the lessors' duty in the event he or she wished to change the address for receiving notices under the lease from 4103 Rossmoyne to some other address.

The undisputed evidence shows that on May 18, 2001, Moosavideen gave notice to all the heirs for whom he had an address, and that the remaining heirs had never changed their addresses for receiving notice as required by the lease. Because Moosavideen's failure to provide notice to the remaining heirs was brought about by the conduct of those heirs through their failure to comply with Article XIII of the lease, Moosavideen's failure to give notice to them separately is excused. *See Jones v. Gibbs,* 133 Tex. 627, 130 S.W.2d 265, 272 (1939) (stating that "failure of the optionee to strictly comply with the terms or conditions of the option will be excused when such failure is brought about by the conduct of the optionor."); *see also Tiffany Dev. Corp. v. Cangelosi,* 514 S.W.2d 321, 325 (Tex.Civ.App.–Houston [1st Dist.] 1974, no writ) (holding same).

Because some heirs did not comply with Article XIII of the lease, Moosavideen's notice of intent to exercise the purchase

option was complete when he gave notice on May 18, 2001 to the only four heirs for whom he had either received notice or had actual knowledge of their addresses. Thus, Moosavideen validly exercised the option to purchase almost one year before he was given notice of his default under the lease.

### Condition Precedent

■ Even if we were to hold that Moosavideen had not validly exercised the option before he was given notice of default, we would nonetheless conclude that he was entitled to exercise the option any time before the contract was terminated because his compliance with the other terms of the lease was not a condition precedent to his right to exercise the lease purchase option.

Moosavideen claims that his right to exercise the purchase option was not conditioned on his compliance with the other clauses of the lease. He further argues that because the contract had not been terminated by the time he first attempted to exercise the option, the heirs should be required to specifically perform the option contract by transferring the property to him. The heirs respond that Moosavideen's right to exercise the option was conditioned on his compliance with the other terms of the lease, and that once they notified him that they intended to terminate the lease [after a 180–day cure period], he no longer had the right to exercise the option to purchase. The issue presented to the court is thus: Can a lessee exercise an option-to-purchase contract in a lease even though he is in noticed, but uncured, default of other terms of the lease? Put more simply, could Moosavideen exercise the option contract during the 180–day cure period?

We first consider whether Moosavideen's compliance with the terms of the lease is a condition precedent to his right to exercise the purchase option. In *Cook v. Young*, 269 S.W.2d 457, 458 (Tex.Civ. App.-Fort Worth 1954, no writ), a lessee filed suit, seeking specific performance of an option-to-purchase clause in a lease contract. The trial court granted summary judgment in the lessee's favor. *Id.* On appeal, the lessor argued that the summary judgment was improperly granted because there was a fact issue regarding whether the lessee had complied with the terms of the lease by paying all water, gas, and other utility bills accruing on the leased property. *Id.* at 460. The court of appeals held that compliance with the terms of the lease was not a condition precedent to the optionee's right to exercise the purchase option. *Id.* "While we find such a provision in the lease contract, we do not find it in that part of the instrument containing the option to purchase. The option is unconditionally granted and there is no requirement creating any condition precedent or otherwise limiting the right to exercise the option." *Id.*

In *Giblin v. Sudduth*, 300 S.W.2d 330, 332 (Tex.Civ.App.-Austin 1957, writ ref'd n.r.e.), the following purchase option was included in the contract of sale of an adjoining tract of land:

> The seller agrees to give the purchaser an option on the acre tract joining the property they are buying from the seller on the east; this option will be for 5 years and the purchasers can take up their option at any time within 5 years from the date by pay [sic] the seller $1500.00 in cash. The purchaser agrees to pay a yearly rental of $10.00.

The purchaser brought an action for specific performance of the option contract. *Id.* at 331. The court of appeals held that the purchaser's failure to pay the annual rental amount did not operate to bar the action for specific performance. *Id.* at 334. "The option was not conditioned upon the

payment of the annual rental, the option was for five years and the purchasers were allowed to take up their option at any time within five years by paying the seller $1500.00 in cash." *Id.*

As in *Cook* and *Giblin,* the option clause in this lease agreement is not conditioned on the lessee's performance of the terms of the lease. The option provides that "[i]n consideration of the amount of the rental payments hereunder, paid and to be paid, and of the other valuable considerations inuring to the benefit of the LESSOR hereunder, the LESSOR hereby gives and grants to the LESSEE, and LESSEE shall have an optional right at any time within a period of the term of this lease, to purchase the interest of Lessor in and to the demised premises . . ." (Emphasis added.) While the option provision recites the rental payments as consideration, it does not condition the right to exercise the option on compliance with any of the other terms of the lease. Instead, the language clearly states that the option can be exercised "at any time within a period of the term of this lease." It is undisputed that, at the time Moosavideen was able to finally give notice to all of the heirs, on October 14, 2002, rental payments were current, the lease had not yet terminated, and could not be terminated until November 12, 2002, when the "cure" period expired.

Had the parties wished to create a condition precedent to the lessee's right to exercise the option agreement conditioned on the lessee's compliance with the terms of the lease, they could have done so. For example, in *Tidwell v. Lange,* 531 S.W.2d 384, 385 (Tex.Civ.App.-Waco 1975, no writ), the option to purchase in the lease read as follows:

[P]rovided that lessee *while not in default hereunder* and during the final month of this lease term, is hereby given the privilege of purchasing said premis-

es for the sum of $26,000 ($2,600 cash down payment and a note for the balance payable in monthly installments at 8% interest for a 15 year period). (Emphasis added.)

At the time he gave notice of his intent to exercise the purchase option, the lessee was two months in default on the monthly lease rental payments. *Id.* The court held that the lessee's notice of his intent to exercise the option was ineffective because, contrary to the terms of the option, the lessee was in default [due to nonpayment of the lease] at the time he attempted to exercise the option. *Id.* at 386. Put another way, the lessee's right to exercise the option to purchase was specifically conditioned on the fact that he not be in default at the time he exercised the option. In contrast, there in no language in the present lease that requires the lessee to free from default before exercising the option contract.

Another instructive case is *Tye v. Apperson,* 689 S.W.2d 320, 321 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e). In *Tye,* the purchase option provided:

[T]his Option Agreement is conditioned upon the true and full performance of all of the Lessee's obligations under the terms and conditions of that Lease Agreement. Should [lessee] default or otherwise be in violation or breach of any of the terms and conditions of that Lease Agreement, then, at Optionor's election, this Option Agreement shall lapse and be null and void for all purposes.

*Id.* The lessee attempted to exercise the purchase option, and the lessor responded that the option had lapsed. The court noted as follows:

The right to terminate the grant of the option . . . is not self-executing. The grant of the option does not self-destruct even though the lease terms are breach-

ed; before the option lapses, ... the optionors, must have elected to terminate the option and agreement and declare it null and void for all practical purposes.

*Id.* at 323. The court held that the lessor did not declare the option agreement to be lapsed and terminate the contract until after the lessee exercised the option, therefore the lessee had properly exercised his right under the option agreement and the lessee was entitled to specific performance. *Id.* at 323–24. Thus, even when an option contract requires compliance with the terms of the lease, if termination of the contract is at the option of lessor, and the lessor has not declared the option lapsed, the lessee may exercise the purchase option. But, as we stated earlier, the option contract in this case does not condition the right to exercise the option on the lessee's compliance with the terms of the lease.

### Summary

In sum, we hold that the heirs could not prevent Moosavideen from exercising the option to purchase by claiming that he had not given each of them notice, when, in fact, the heirs had not given Moosavideen any address other than 4103 Rossmoyne, as required by Article XIII of the lease. Therefore, Moosavideen validly exercised the lease purchase option on May 18, 2001, when he gave notice to the four heirs for whom he had actual knowledge of their addresses.

Additionally, the parties could have, but did not, condition the lessee's right to exercise the purchase option on the lessee's not being in default of the lease. Because Moosavideen's compliance with Article X of the lease was not a condition precedent to his right to exercise the purchase option, the trial court erred in finding that "[Moosavideen] was not entitled to exercise the rights and purchase option grant-

ed in Article XV of the Lease by virtue of his previously notice but uncured material breach of Article X of the Lease."

■ Moosavideen validly exercised the purchase option before it terminated. On that date—May 18, 2001—the purchase option was converted into a contract of purchase and sale. *See Sinclair Refining Co. v. Allbritton,* 147 Tex. 468, 218 S.W.2d 185, 188 (1949) ("[T]he act of delivering the notice [of intent to exercise purchase option], if performed within the time limit and not otherwise invalid, forthwith converts the [purchase] option into a contract of purchase and sale.").

Accordingly, we sustain issues one and two. We reverse the portion of the judgment declaring that Moosavideen was not entitled to exercise the purchase option.

### DAMAGES FOR BREACH
### OF THE LEASE

■ In issue three, Moosavideen contends that the trial court erred by awarding damages against him for breaching the lease. Specifically, Moosavideen contends that the heirs did not incur these damages until after he exercised the purchase option.

The trial court judgment provided that the heirs "have and recover damages against Moosavideen for breach of the Lease contract in the amount of $88,456.16 for cost to assess the environmental contamination of the Lease Property." The undisputed evidence shows that the heirs incurred these damages in February and October of 2002. However, we have already held that Moosavideen validly exercised the lease purchase option on May 18, 2001, before these damages were incurred. On that date, the option contract was converted to a purchase and sale agreement and the landlord-tenant relationship ceased. Thus, the heirs' damages

were not caused by Moosavideen's breach of the contract. However, we do not hold that Moosavideen could never be liable to the heirs for breaching Article X of the lease simply because he purchased the property.

Accordingly, we sustain issue three. We reverse the portion of the judgment awarding breach of contract damages because the damages were not caused by Moosavideen's breach.

## EQUITABLE OFFSET

In their cross-appeal, the heirs argue that the trial court erred by awarding Moosavideen an equitable offset against their judgment for the amounts that he spent to acquire the lease and on taxes. Moosavideen agrees that, if the Court holds that he validly exercised the purchase option, the equitable offset should be reversed. Accordingly, because we have reversed the damages awarded to the heirs and declared that Moosavideen validly exercised the purchase option, we also reverse the equitable offset that the trial court awarded him.

## ATTORNEY'S FEES AND COSTS

■ The trial court also awarded the heirs attorney's fees pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon Supp.2008), which allows the trial court to award attorney's fees and costs that are "equitable and just" in a declaratory judgment action. Moosavideen argues that we should reverse the attorney's fees and costs awarded to the heirs and render an award of attorney's fees and costs to him.

■ It is appropriate to award attorneys' fees to the prevailing party in a declaratory judgment action if the trial court believes such fees to be reasonable and necessary and the award of such fees to be equitable and just. *State Farm Lloyds v. Borum,* 53 S.W.3d 877, 894 (Tex.

App.-Dallas 2001, no pet.). However, the trial court is not required to award attorney's fees to the prevailing party in a declaratory judgment, and, indeed, may award attorney's fees to the nonprevailing party. *Id.* Because we have reversed the declaratory judgment, and the judgment does not indicate whether the award of attorney's fees and costs to the heirs was made because they were the prevailing party at trial, we reverse the award of attorney's fees and costs and remand both parties' claims for the same to the trial court for its reconsideration in light of this opinion. *See id.* at 894–95.

## CONCLUSION

We reverse the declaratory judgment in favor of the heirs and render judgment declaring that Moosavideen is entitled to specific performance to exercise the purchase option granted in Article XV of the lease. We also reverse the portion of the judgment awarding the heirs $88,456.16 in damages against Moosavideen on their breach of contract claim and render judgment that the heirs take nothing on such claim. We also reverse the portion of the judgment granting an equitable offset to Moosavideen and render judgment that he take nothing on such claim. Finally, we reverse the award of attorney's fees and costs to the heirs and remand both parties' claims for attorney's fees and costs to the trial court for further proceedings.