Socs VRATIS et al., Appellants,

v.

Gordon BAXTER, Jr., et al., Appellees.

No. 6195.

Court of Civil Appeals of Texas.

Beaumont.

June 5, 1958.

Rehearing Denied July 7, 1958.

King, Sharfstein & Rienstra, Beaumont, Earl Black, Pt. Arthur, for appellants.

Keith, Mehaffey, McNicholas & Weber, Beaumont, for appellees.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Jefferson County, in favor of the appellees, Gordon Baxter, Jr., et al., against the appellants, Socs Vratis, et al., decreeing specific performance of a contract for the sale of Radio Station KOLE by appellants to appellees.

On November 19, 1955, the appellants, Socs Vratis and Mary Anne Petru, were co-partners, doing business as Port Arthur Broadcasting Company, and as such they owned and operated Radio Station KOLE in Port Arthur. At that time the appellees, Gordon Baxter, Jr., and Lester Ledet were radio announcers and performers. On that date the four parties entered into a written contract in which the appellants agreed to sell Radio Station KOLE, together with the land and physical equipment used to operate it to the appellees for the agreed price of $90,000. The agreement was an optional contract, by the terms of which the appellees were granted the right to purchase said radio station for a period of one year from the date of the contract. If the appellees should exercise such option within six months from date the cash payment was to be $35,000 and the balance payable in the form of a promissory note secured by a vendor's lien and chattel mortgage lien; if appellees should exercise their option from six to nine months from the date of the contract the terms of the sale would be $30,000 cash and a note for $60,-000; that if they should exercise their option from nine through twelve months, then the cash consideration should be $25,-000 and the note would be in the sum of $65,000. The contract further provided that all of its terms were subject to the approval of the sale and transfer of such radio station by the Federal Communica-tions Commission, and it was agreed that in the event the option should be exercised, all parties agreed to cause to be executed and prosecuted an application to the Federal Communications Commission for transfer and assignment of the license by the appellants to the appellees. The appellees also agreed that should they exercise their option to buy that they would obtain life insurance on each other in an amount equal to the purchase price of the radio station, and that in event of death of either, or both, parties, the proceeds of said policy should be first applied to the balance of such purchase price. The contract also contained an agreement by appellants to employ appellees for announcing duties and as advertising salesmen. It was agreed that during the option period the appellants would not encumber any of the property to be sold other than for the conduct and operation of the radio station and that they would deliver the property free of encumbrances, if the appellees should exercise their option. The contract made further provision for retention of cash assets and accounts receivable by the appellants.

On September 10, 1956, appellees sent the following letter to the appellants:

"2323 Fifth Street
Port Arthur, Texas
September 10, 1956

"Mr. Socs Vratis, and
Miss Mary Anne Petru
d/b/a Port Arthur Broadcasting Company
Port Arthur, Texas

"Dear Mr. Vratis and Miss Petru:

"This is notification that we are exercising our option to buy Radio Station KOLE.

"Pursuant to the provisions of Article I (C) of the option agreement which we all signed on November 19, 1955, we are exercising our option during the 'ninth' through the 'twelfth' month. As required by Article I (C) we are prepared to pay

$25,000.00 in cash, and execute the promissory note for $65,000.00.

"A 'Transfer to Escrow of Cashier's Check' is attached and made a part of this letter. The Transfer, which is self-explanatory, is presented to you as the required cash payment. In keeping with the intent of our option agreement, the First National Bank of Port Arthur will pay you $25,000.00 in cash when you present to it evidence that the 'KOLE' Federal Communications Commission License has been assigned to us, d/b/a 'Baxter-Ledet Broadcasting Company' and that you have fulfilled your duties under the option agreement.

"In fulfillment of our duties under Art. III of our option agreement, we have fully executed the Assignee's portion of Federal Communications Commission Form No. 314, a copy of which is attached hereto both as a matter of record and for your assistance in preparing the assignor's portion. For your *accomodation*, there is also attached to this letter four blanks of the Assignor's portion of Form No. 314.

"Plans have been made so that the partnership life insurance required by Article IV will be placed in effect with the execution of the transfer and assignment contemplated in that Article.

"It now becomes the purpose of this letter to request that you carry out your obligations under Article III of our option agreement by doing these things:

"1. Complete the Assignor's part of the application.

"2. Join with us in submitting the application to the Federal Communications Commission.

"3. Assist us in obtaining the transfer and assignment to us of your License for Radio Station KOLE.

"Sincerely yours,

/s/ Gordon Baxter, Jr.
/s/ Lester Ledet"

The "Transfer to Escrow of Cashier's check" which was attached to and made a part of the above letter was an agreement between the appellees and the First National Bank of Port Arthur, not signed by and not consented to by the appellants, reciting that appellees had delivered to said bank cashier's check numbered C-91211, dated 9-7-1956 in the amount of $25,000 and payable to the order of said bank. Said agreement then provided that said check was delivered to said bank to be held by it in escrow subject to certain instructions, designated "First Instructions", the ones here material being:

1. That appellants Vratis and Petru would present to said bank a general warranty deed conveying to appellees title to Lots 7, 8, 9 and 10 in Block 5 of Boulevard Acres, an addition to the City of Port Arthur, Texas, said deed to provide for a vendor's lien unto Vratis and Petru to secure the balance of the purchase price in the sum of $65,000.

2. That appellants would present to said bank evidence that the Federal Communications Commission had approved the transfer of the license of Radio Station KOLE from the appellants to the appellees.

3. That said appellants would present to said bank a bill of sale conveying to appellees title to the personal property made the subject matter of said option agreement.

Said "Transfer to Escrow of Cashier's check" agreement then provided:

"Upon receipt of the aforesaid instruments, the Bank shall notify the Partners in writing. The partners (appellees) shall have ten (10) days from receipt of said Notice to determine whether said Vratis and Petru are able to deliver good and marketable title to said realty and personalty.

"If, within said ten day period, written objection is not delivered to said Vratis and Petru (with a copy thereof being delivered to said Bank), it shall be construed as an acceptance of said title; and the Bank shall cash said cashier's check, and the proceeds there-

of shall be paid jointly to Socs Vratis and Mary Anne Petru dba Port Arthur Broadcasting Company.

"If said written title objections are made by the Partners, then Vratis and Petru shall have a reasonable time to cure said objections, and show good and marketable title. If Vratis and Petru can show good and marketable title within said reasonable time, then —in that event—the Bank shall cash said Cashier's check; and the proceeds thereof shall be paid jointly to Socs Vratis and Mary Anne Petru, dba Port Arthur Broadcasting Company.

" 'Alternate Instructions'

"In the event of failure of Vratis and Petru to furnish good and marketable title in said reasonable time, the Partners may request that the said First National Bank cash the Cashier's check, and pay the proceeds thereof jointly to the Partners.

"If the First National Bank is unable to comply with the 'First Instructions' on or before February 19, 1957, the Partners may request that the said First National Bank cash the Cashier's check, and pay the proceeds thereof jointly to the Partners.

"In the absence of the Partners making request as aforesaid, the said Bank shall proceed to comply with the 'First Instructions' as soon as possible.

"II.

"It is intended by the undersigned Partners that the execution of this instrument, and the delivery of the cashier's check into escrow shall be, and be construed to be, a delivery of $25,000.00 in cash to Socs Vratis and Mary Anne Petru d/b/a Port Arthur Broadcasting Company (in compliance with the escrow agreement signed by the partners and said Vratis and Petru on November 19, 1955) provided that Vratis and Petru have fulfilled the conditions set out in the foregoing 'First Instructions.'

"III.

"This transfer has been prepared in triplicate originals; one copy being retained by the Partners, one copy being delivered upon execution to the First National Bank of Port Arthur, Texas; and one copy, together with a photostatic copy of the Cashier's check, being subsequently delivered by the partners to Socs Vratis and Mary Anne Petru."

Such letter, dated September 10, 1956, was also accompanied by two instruments, one called "Contract to Lend Money" and another called "Articles of Partnership". These two instruments are not mentioned in the above letter, but were attached thereto when the letter was sent to the appellants. The "Contract to Lend Money" accompanying said letter, after reciting that Baxter and Ledet had formed a common law partnership, acknowledged receipt of the sum of $30,000 in cash from four individuals (who were not parties to the option agreement) and provided that by way of compensation for such money so loaned to appellees, the lenders would have a share in the distributable profits of Radio Station KOLE, a $\frac{3}{18}$ths share being allocated to Alton Angelle, a $\frac{1}{18}$th share to Dean M. Durham, a $\frac{1}{18}$th share to Mrs. Emma Crosthwait, and a $\frac{1}{18}$th share to H. A. Drouilhet. The distributable profits in which such lenders were to have such respective shares were defined as the cash income remaining after certain enumerated expenses and outlays had been deducted. Among the items to be so deducted from the cash income of said station was "payments to principal and interest on station debts or obligations incurred after the date of this contract. (Payments on said indebtedness to Socs Vratis and Mary Anne Petru, or on any other personal obligations of the partners are not within the purview of this section)."

The option contract by its terms extended for one year from its date, November 19, 1955. On November 20, 1956, the appellant Vratis sent the following letter by registered mail to the appellee Baxter (an identical letter was sent to appellee Ledet):

"KOLE
250 Watts-Fulltime
P.O. Box 1126      Telephone 2–9436
Port Arthur, Texas

November 20, 1956

"Registered Mail
No. 3473
Return Receipt Req.

"Mr. Gordon Baxter
2323—5th Street
Port Arthur, Texas

"Dear Mr. Baxter:

"I have given careful consideration to your letter of September 10, 1954, and the documents associated therewith. You state in the letter that it is a notification of your exercise of the option to purchase Station KOLE, Port Arthur, Texas, pursuant to the terms of an option agreement providing for such purchase, dated November 19, 1955.

"This is to advise you that the option agreement to which you refer is no longer in effect because of failure on your part to fulfill its provisions, including, but not limited to the provisions of paragraph V, thereof, which were basic to that agreement. Moreover, independent of any other matter relating to the option agreement, I would point out that the letter of September 10, 1956, would in any event be deficient as an exercise of the option since it contains no provisions for notes to cover the unpaid balance of the purchase price of the character contemplated when we executed the agreement. The form of contract prepared by my counsel and provided you on July 19, 1956, which has been rejected by your action herein and is no longer an outstanding proposal, contains the type of note and endorsement and guaranty thereof that we understand to be necessary. Your letter of September 10, 1956 does not provide for the type of note obligation to cover the unpaid balance that the option agreement, had it remained effective would have required.

"In view of your failure to fulfill the obligations of the option agreement, including but not limited to the respects indicated above, and the consequent termination of the effectiveness of that agreement, we are prepared to continue your employment with Station KOLE only upon terms to be agreed upon concerning your future performance and relationship with the station as station employees, and provided it is clearly understood that such continued employment is independent of and unrelated to the option agreement of November 19, 1955, which has become null and void.

"Your continued employment with KOLE must be upon these conditions. Please advise me should you desire to continue with Station KOLE so that we may discuss this matter in the light of the above conditions.

"I am aware of your interest in purchase of Station KOLE. Should you desire to discuss this matter further to determine whether it is possible to arrive at a definitive and mutually acceptable agreement we will be pleased to hold such discussions.

"Very truly yours,
/s/ Socs Vratis"

Thereafter, on November 23, 1956, appellees Baxter and Ledet filed this cause in the district court of Jefferson County, Texas, against appellants Vratis and Petru, alleging and contending therein that they had fully complied with each and every term and condition of said option agreement dated November 19, 1955, by their purported letter of acceptance dated September 10, 1956; that appellants failed and refused to complete the sale of said Radio Station as provided for in said option agreement; and praying for a decree requiring specific performance of the option contract dated November 19, 1955, and for other relief which is not material on this appeal.

In their First Amended Original Answer appellants, in addition to a general denial, expressly alleged that accompanying the appellees' purported acceptance of September 10, 1956, were numerous and several instruments and agreements made a part of said purported acceptance, which materially changed the terms and provisions of said option agreement and were at variance therewith in many respects, and that consequently said purported acceptance of said option was not in fact or in law an acceptance thereof but on the contrary was in the nature of a novation and an attempt on the part of appellees to negotiate and agree upon an entirely new agreement relating to the purchase of said radio station and that appellants refused to accept the terms of said new purported agreement inasmuch as the same was not in conformity with the terms and provisions contained in the option agreement.

At the conclusion of all of the evidence, the parties stipulated that there was no issue of fact to go to the jury, but the single issue before the court was whether or not the appellees had accepted the option contract of November 19, 1955, by their letter of September 10, 1956, and instruments accompanying the same, which constituted a pure question of law for determination by the court and that if the court determined that there had been a legal acceptance of the option by the appellees, then appellees were entitled to specific performance of said contract and that on the contrary if the court should determine that there had been no legal acceptance of said option, then judgment should be for the appellants.

The trial court, after considering the pleadings, the evidence and argument of counsel, concluded that there. had been a legal acceptance of the option and accordingly rendered judgment for appellees against the appellants.

In their Amended Motion for New Trial, Grounds 1 and 2 thereof, appellants complained of this ruling of the trial court because appellees' letter of September 10, 1956, and the instruments accompanying the same were not an unqualified and unconditional acceptance of the option contract, but on the contrary said letter and accompanying instruments deviated from and modified the terms of said option contract.

Appellants' Amended Motion for New Trial was overruled and they have perfected their appeal to this court for a review of the judgment.

The appellants bring their appeal under 12 points of error. By their first two points, appellants contend that the judgment was error because the undisputed evidence showed that appellees' letter of September 10, 1956, and instruments accompanying it were not an unqualified and unconditional acceptance of the option contract dated November 19, 1955, and because said letter of September 10, 1956, and instruments accompanying it deviated from and modified the terms of the option contract.

Appellants contend that the letter of acceptance and the accompanying documents, especially the "Transfer to Escrow of Cashier's check", imposed the following additions, conditions and obligations which had no basis in the option agreement itself:

1. The transfer agreement and Cashier's check is substituted for a cash payment of $25,000.

2. The First National Bank of Port Arthur is imposed upon the appellants as an escrow agent whose judgment the appellants must satisfy with reference to compliance before they can receive the sum of $25,000.

3. Appellants must present evidence to said bank that the Federal Communications Commission had approved the transfer of the license of Radio Station KOLE. Appellants say that their only obligation under the option agreement was to execute and assist in the prosecution of an application to the Federal Communications Commission for such a transfer, and that said option

agreement does not obligate them to present evidence to the bank or to any other party that the Federal Communications Commission has approved the transfer of such license.

4. The conveyance of the real property involved in the sale is required to be by general warranty deed presented to said bank, whereas the option agreement contained no agreement nor obligation by the appellants to convey by general warranty deed, and the option agreement does not obligate appellants to present said conveyance to the bank or to any party other than the appellees.

5. Upon receipt of the instruments mentioned, the bank would notify appellees in writing of such receipt, and appellees would have ten days from receipt of notice to determine whether appellants are able to deliver good and marketable title to the property.

6. If written objections are made by appellees within such ten day period, then appellants shall have a reasonable time to show good and marketable title.

7. If the instructions given to the bank in said transfer agreement are not complied with to the satisfaction of the bank by February 19, 1957, appellees may then demand from the bank return of said $25,-000, and the entire agreement is at an end.

8. It was intended by the appellees that the execution of the escrow agreement and delivery of the Cashier's check into escrow shall be construed to be a delivery of $25,-000 in cash to the appellants in compliance with the option agreement, provided that appellants have fulfilled the conditions set out in such instrument.

9. The contract to lend money accompanying the letter of acceptance assigned to four persons, not parties to the option agreement, one-third of the distributable profits earned by said radio station while being operated by appellees, such payments to be paid to said four persons before the payment by appellees of monthly install-ments due on the vendor's lien note to be executed by appellees. Appellants say this would materially reduce the ability of the appellees to meet the payments on said note. Appellants point out in their brief that it is without dispute in the record that in the event of default on said vendor's lien note and a foreclosure of the vendor's lien and chattel mortgage, the personal property incident to said radio station would have little value beyond that of junk, and that the real estate involved would not have a value in excess of $10,000.

The appellants say that the appellees' letter of acceptance, dated September 10, 1956, and accompanying documents did not constitute an unequivocal and positive acceptance of the offer to sell, so as to create a binding contract to sell.

"The acceptance of an option, to be effectual, must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms or conditions of the option. Substantial compliance with the terms of the option is held not sufficient to constitute an acceptance; to be effectual, the acceptance must be identical with the offer, or, at least, there must be no substantial variation between them. An acceptance of an option must be such a compliance with the conditions as to bind both parties, and if it fails to do so it binds neither. In the absence of anything in the option contract providing otherwise, an acceptance meeting the foregoing requirements is a sufficient exercise of the option. On the other hand, a purported acceptance containing a new demand, proposal, new conditions, or modification of the terms of the option is no acceptance, but amounts to a rejection of it." 91 C.J.S. Vendor and Purchaser § 10, p. 853.

Godfrey v. Central State Bank, Tex.Civ. App., 5 S.W.2d 529; Lambert v. Taylor Telephone Cooperative, Tex.Civ.App., 276 S.W.2d 929; Summers v. Mills, 21 Tex. 77,

all state in more detail the application of the above general rule that an acceptance of an option must strictly comply with the option contract, and an attempted acceptance which modifies any of its terms is no acceptance.

We are unable to agree with the views of the appellants. The letter of acceptance was positive and unequivocal in stating that the appellees were by letter exercising their option to buy Radio Station KOLE. The amount of money to be paid, the cash consideration, execution of notes, all as set forth in the option agreement, were thus agreed to. All the remainder of the matters complained of by the appellants as being changes and additional requirements to be met by the appellants in making the sale appear to us to be statements of details in regard to how the sale was to be completed. The option contract itself is silent as to the method to be employed in consummating the sale and transfer of the station and the license to operate it, and the payment of the cash consideration at such time when the Federal Communications Commission should approve transfer of the license. It appears that this transaction was by no means as simple as an option contract for the sale of real property or a chattel. The appellants could not expect, under the option contract, the appellees to pay them $25,000 in cash at the time the option was accepted and take their chances on recovering it from the appellants in the event the application for transfer of the radio station license should be denied by the Federal Communications Commission. On the other hand, the appellees could not expect appellants to execute the necessary documents for the transfer of the radio station license to the appellees without some assurance of certainty of payment at once of the cash consideration of $25,000. The transfer by the appellants to the appellees of the license to operate the radio station is certainly the largest portion of consideration passing to the appellees for the total sales price of $90,000. The transfer of the realty was only a minor part of the entire deal of the parties. It remained therefore that some method be devised and suggested by which the appellees should part with their $25,000 cash, in a manner which would place it beyond their control in the event the transfer of the license should be approved, and at the same time make the $25,000 returnable to them in the event the transfer should be denied. This the escrow agreement appears to have accomplished, without any variation from the terms of the option agreement itself. The trial court in its judgment recognized the necessity for some such detailed plan of compliance with the decree of specific performance. The decree ordered the appellants to execute all necessary documents to transfer the license of the radio station to the appellees, deliver a warranty deed to the land involved, retaining a vendor's lien to secure the deferred payments, to execute and deliver a bill of sale of the personal property involved, secured by a chattel mortgage, and to execute and deliver an assignment of release of certain real property. The appellees were ordered to pay $25,000 into the registry of the district court, to execute a vendor's lien note, all necessary documents for the transfer of the license and permit to operate the radio station, the chattel mortgage and assumption of the lease agreement. The clerk of the district court was ordered to accept the several instruments required of the appellants and the appellees, and to retain possession of such instruments until proof is presented to him that the Federal Communications Commission has approved the transfer of the permit and license. In the event the application to transfer should be denied by final, unappealable order of the clerk is ordered to return to the respective parties each of the instruments executed and return to the appellees their cash deposit; in the event said application to transfer is granted, the clerk is ordered to insert dates in the various written instruments deposited with him, deliver the cash payment to the appellants and deliver the various instruments to the parties, as provided in such judgment. This the trial court is authorized to do under its

general equitable powers. The suit for specific performance is an equitable remedy, and once the court acquired jurisdiction of the controversy, it acquired the power and authority to provide equitable relief in the premises. Included within such powers, as we view it, were the court's power to have the clerk of the district court insert dates into the various instruments, such as the deed, notes and assignments, and also to require the execution of a general warranty deed by the appellants.

We note that nearly all the authorities cited by both the appellants and the appellees in their briefs on the question of the variation from the terms of an option agreement by a letter of acceptance are authorities of courts of other states and jurisdictions. Nearly all of them concern option agreements for the sale of land only. None of such authorities deals with the peculiar problems and difficulties involved in an option contract for the sale and transfer of a permit and license to operate a radio station, under the rules of the Federal Communications Commission. We have examined Volume 1 of Williston on Contracts and Restatement of the Law on Contracts, Volume 2, and the Texas Annotation to Restatement of Contracts by Judge Hildebrand (assisted by John Rienstra and others). In none of these volumes do we find any statement of the law of contracts which is contrary to our view that the letter of acceptance here, together with the attached instruments, was a valid acceptance of the option contract to buy, and made effective an executory contract for the sale of the radio station. Appellants' first two points are overruled.

By their points Nos. 3, 4, and 5 appellants contend that since the undisputed evidence showed that long prior to September 10, 1956, appellees submitted to the appellants a proposal to purchase Radio Station KOLE different from the terms of the option contract, the appellees, in effect, made a counter proposal for the purchase of said station, and abandoned their rights under the written contract of November 19, 1955,

and therefore no option agreement to sell was in effect at the date of appellees' acceptance of the option agreement of September 10, 1956. Appellants' remaining points of error 6 through 12, inclusive, complain of the action of the trial court in refusing to admit into evidence the testimony of Vratis and Baxter and various written instruments, tendered by the appellants, in support of their contention presented under points 3, 4, and 5. Appellee Baxter testified that in May, 1956, prior to the acceptance of the option of September 10, 1956, negotiations were had between appellees and appellants regarding acceptance of the option and in an attempted exercise of the option in May, 1956, they submitted to the appellants an escrow agreement dated May 7, 1956, an instrument designated "Articles of Limited Partnership, Baxter-Ledet Broadcasting Company" and a lending agreement between appellees and Mr. Angelle and the other lenders. Other instruments and purported instruments were submitted to Mr. Vratis at that time. The tendered instruments, which were not executed but were proposals, were excluded by the court on objections of the appellees. The objection was that said instruments were an attempt to vary the terms of the option agreement and to insert other and additional requirements thereto, and was an attttempt to create a new contract by novation. The appellants presented to the court a motion for leave to file a trial amendment, alleging "that the plaintiffs and the defendants by their course of action and dealings and through various proposals and counter proposals occurring from the first part of January, 1956, to September 10, 1956, abandoned the option contract dated November 19, 1955, made the basis of plaintiffs' suit." This motion for leave was denied by the trial court, and the appellants make no complaint on appeal regarding such action of the trial court upon their motion to file the trial amendment.

The appellees say in answer to the contentions raised by appellants in their

points 3 to 12, inclusive, that there was no pleading by the appellants supporting their contention that the option agreement had been abandoned before its acceptance on September 10, 1056, and that therefore such defensive matters are not available to the appellants. We believe that under the provision of Rule 94, Texas Rules of Civil Procedure, the matters sought to be raised by the appellants under these points constituted matters of avoidance and it was necessary that they be pleaded affirmatively in order to become available as a defense to the suit of the appellees. See McDonald's Civil Practice, Vol. 2, page 673. The defense sought to be interposed here, that appellees had abandoned their option in May, 1956, are clearly matters not included in the appellants' amended answer. In fact by such pleading the appellants particularly alleged that the appellees' purported acceptance letter dated September 10, 1956, was accompanied by numerous instruments which materially changed the terms and provisions of said option agreement, and that consequently said purported acceptance was not in fact and in law an acceptance thereof, but on the contrary was in the nature of a novation on the part of said appellees to negotiate and agree upon an entirely new agreement relating to the purchase of said Radio. Station KOLE, "and that these defendants refused to accept the terms of said new proposal inasmuch as the same was not in *confirmity* with the terms and provisions contained in the option agreement."

Both the appellants testified in the course of the trial that the acceptance by appellees, dated September 10, 1956, was refused, not because the option agreement had been abandoned by the appellees in May, 1956, but for the reasons that the instruments attached to the letter of acceptance did not conform to the option agreement, and that the letter contained no provision for notes of the character contemplated when the agreement was executed. The letter which Vratis wrote to the appellees contained no intimation that he believed the option contract had been abandoned by the negotiations in May, 1956.

The defensive matters presented by the appellants under their points 3 to 12, inclusive, are not pleaded by the appellants and are not available to them as a defense. These points present no error and they are overruled.

We believe the judgment of the trial court is correct and it is accordingly affirmed.