Tony TYE and George W. Brock, Appellants,

v.

William E. APPERSON, Jr. and Wife, Sherry Apperson, Appellees.

No. 2–84–228–CV.

Court of Appeals of Texas, Fort Worth.

May 8, 1985.

Douglas & Elms, Inc. and Lee Elms and Glen D. Mangum, San Antonio, for appellants.

Hill, Heard, Oneal, Gilstrap & Goetz and Shane Goetz and Frank M. Gilstrap, Arlington, for appellees.

Before JORDAN, ASHWORTH and HOPKINS, JJ.

## OPINION

JORDAN, Justice.

The Appersons, appellees, filed a declaratory judgment suit asking for a judgment declaring void an option granted appellants Tye and Brock in February of 1978 to purchase certain real estate in Fort Worth, Texas. Appellees also sued to recover the reasonable rental value of the property for the time it was occupied by appellants during the pendency of the lawsuit. Appellants Tye and Brock, by a counterclaim, contend that they had properly exercised their option and seek specific performance of the option to purchase.

In a trial to the court without a jury, the judgment was rendered for appellees, holding the option agreement unenforceable and denying appellants' specific performance. The judgment also awarded appellees reasonable attorney's fees, court costs, and the sum of $19,000.00 which had been deposited into the registry of the court by appellants.

We reverse and render.

In February of 1978, and at the time of trial of this case in October of 1983, the Appersons were the owners of Lots 2, 3, 4, and 5, Block 16, Wilkes Estates, a subdivision of a portion of the J.M. Daniels Survey, City of Fort Worth, Tarrant County, Texas, known also as 5733 Oakdale Drive, Fort Worth. Tye and Brock are the principal shareholders and officers of Hercules DFW Concrete Pumping Service, Inc. (Hercules), a corporation engaged in the concrete pumping business. Under date of February 6, 1978, the Appersons as lessors and Hercules and Tony Tye, individually and as president of Hercules, entered into a lease agreement on the Appersons' property for a period of five years, the lease expiring on or about February 5, 1983. On the same date, the Appersons and Tye and Brock individually entered into a separate agreement under which, on certain terms and conditions, Tye and Brock were granted an option to purchase the property covered by the lease.

The lease agreement provided that no improvements or alterations shall be made in or to the premises without the consent of the lessor in writing and also provided that the lessee should not make any alterations in the building, (except as therein provided), without the consent of the lessor in writing. The lessee also agreed to pay one-half of all real estate taxes and one-half of all the insurance on the demised premises during the terms of the lease as those items became due, upon notification to the lessee by the lessor.

The second paragraph of the option agreement of February 6, 1978, provided as follows:

Optionee shall have the right to purchase the above described real property any time during the five year period beginning on February 6, 1978, and ending on February 5, 1983. To exercise said option, Optionee must give written notification to Optionor of Optionee's election so to exercise said option. Said notification must be given no later than January 6, 1983. Otherwise, said option shall lapse and be null and void.

Paragraph six of the option agreement stipulated the following:

It is specifically understood and agreed that Optionees are presently the sole shareholders of HERCULES DFW CONCRETE PUMPING SERVICE, INC., a Texas corporation, and the Lessee under the terms and provisions of the Lease Agreement which is marked Exhibit B hereto. Accordingly, this Option Agreement is conditioned upon the true and full performance of all of the Lessee's obligations under the terms and conditions of that Lease Agreement. Should Hercules DFW Concrete Pumping Service, Inc., and/or Tony Tye and/or George W. Brock default or otherwise be in violation or breach of any of the terms and conditions of that Lease Agreement, then, at Optionor's election, this Option Agreement shall lapse and be null and void for all purposes.

At the conclusion of the bench trial, the court rendered judgment for appellees

holding that the option agreement was unenforceable and denying appellants' counterclaim for specific performance. No findings of fact or conclusions of law were filed, although they were requested. On appeal, no complaint of this failure to file findings of fact and conclusions of law is urged and any error in such failure is waived.

█ Where there are no findings or fact or conclusions of law filed by the trial court, this court must affirm the judgment of the trial court if it can be upheld on any legal theory that finds support in the record. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977); *Bishop v. Bishop*, 359 S.W.2d 869, 871 (Tex.1962). By their first five points of error, appellants contend that: the trial court erred in finding that strict compliance with the lease agreement by Hercules was a condition precedent to appellants' exercise of the option; the court erred in holding that Hercules materially breached the lease agreement; appellees waived their right to insist upon strict compliance with the lease agreement by Hercules; and appellees were also equitably estopped from alleging breaches of the lease agreement. In their sixth and seventh points of error, appellants maintain they were entitled to specific performance of the option agreement and that the judgment must be reversed because of a lack of necessary parties.

We have carefully reviewed the parties' briefs, as well as the entire record in this case, and while we have also studiously reviewed all points of error, our decision to reverse and render judgment in this case is based on our sustaining of point of error six, and, accordingly, our discussion for the most part, will be confined to this point of error. With respect to the remaining six points of error asserted, it is our opinion that there is either no merit to those points or that, because of our disposition, discussion of such points is unnecessary. Accordingly, those points are all overruled.

By way of explanation, it should be pointed out that as previously mentioned, the lease agreement dated February 6, 1978, was between William E. Apperson, Jr. and wife, Sherry Apperson as lessors and Hercules DFW Concrete Pumping Service, Inc., as lessee. The lease agreement was signed by the Appersons and Tony Tye, individually and as president of Hercules. The option agreement, on the other hand, also signed on February 6, 1978, was between the Appersons, as owners and optionors, and Tony Tye and George W. Brock, individually, as optionees. The option agreement did refer to the lease agreement of the same date between the Appersons and Hercules and it did contain the provisions with respect to the exercising of the option and the termination of the option, above quoted as paragraphs two and six of the option agreement.

The trial court necessarily and impliedly found that certain provisions of the lease agreement between appellees and Hercules had been violated, and it also found that strict compliance with the lease agreement by Hercules was a condition precedent to appellants' exercise of their option.

We are bound by the trial court's findings under the evidence and agree there is ample evidence to show numerous violations of the terms of the February 6, 1978 lease between the Appersons and Hercules, but we disagree with the court's holding that the mere occurrence of these defaults or breaches under the lease agreement, and under the terms of the option agreement, caused the option to purchase to automatically lapse and become null and void. Our reason for such disagreement may be found in the language in terms of paragraphs two and six of the February 6, 1978 option agreement, both of which are quoted earlier in this opinion. Under paragraph two of the option agreement, the optionees, Tye and Brock, had the right to exercise the option anytime between February 6, 1978 and February 5, 1983, by giving written notification to the Appersons of their election so to exercise the option. The record reflects that on December 30, 1982, Tye and Brock, through their attorney, gave written notice to the Appersons of their intention to exercise the option.

■ Paragraph six provides that the option agreement is conditioned upon the true and full performance of all of the lessees' obligations under the lease and that any breach thereof by Hercules, Tye, or Brock, will cause the option agreement to lapse and be null and void. However, the lapse of the option agreement occurs only at *"optionors' election."* (Emphasis added.) This means to us that despite breaches or defaults by the lessee, before lessees are prevented from exercising their option, they must be advised by the optionors, the Appersons, that because of such defaults or breaches, the option agreement has lapsed. This was not done in this case until well after Tye and Brock, as optionees, on December 30, 1982, exercised their option to purchase the subject property. In fact, it was not done until January 11, 1983, by letter from appellees' attorney to appellants.

The right to terminate the grant of the option, contained in paragraph six of the option agreement, is not self-executing. The grant of the option does not self-destruct even though the lease terms are breached; before the option lapses, the Appersons, the optionors, must have elected to terminate the option agreement and declare it null and void for all practical purposes.

■ We are bound, as was the trial court, to not only consider both the lease and option agreements together, but also to give effect to all parts of both instruments if possible. *Smith v. Davis*, 453 S.W.2d 340, 345 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.). As previously stated, paragraph two granted to Tye and Brock the right to exercise the option at anytime during the five-year lease period. Paragraph six of the option agreement, as we have seen, did require "true and full performance of all of the lessees' obligations", providing additionally that the default or breach of any of the terms and conditions of the lease would, *"at optionors' election," effect a termination or lapse of the option agreement.* (Emphasis added.)

■ There can be no question that there was ample evidence in this record of numerous violations or breaches of the lease agreement by Hercules. Appellees testified that though they observed many of the breaches committed by Hercules and/or Tye and Brock, and notified Hercules and/or Tye and Brock of such violations, nevertheless, there were some violations which went unnoticed by them throughout the term of the lease. It was not until October of 1982, just a few months before the lease was to expire in February of 1983, that the written notice of violations was sent to Hercules. This letter concerned the installation on the leased property by Hercules of a mobile home for use as a residence. After complaint was made by the Appersons of this installation, the mobile home was removed within ten days. However, even after the mobile home was removed, a clothesline, a Butane tank, electrical utility service, and other utility lines and connections, plus a concrete sidewalk or walkway, remained and were obvious to the Appersons or to anyone else. Moreover, there were other open and obvious alterations, additions, or deletions from the leased property, all of which were violations or breaches of the lease. It is obvious from this record that appellees saw and observed many of these violations for a long period of time before any complaint was made or before they said anything to appellants about the option agreement lapsing because of these violations. We think they were too late in declaring the option agreement lapsed, since that was not done until well after the option agreement was properly exercised under the terms of the agreement.

■ An option agreement, such as the one here, is a contract between the parties; however, until such time as the option is exercised in accordance with the contract, the contract is said to be unilateral in nature. Then, when the option is exercised in accordance with the terms of the contract, it becomes a binding bilateral contract. *C & W Manhattan Associates v. Lively*, 588 S.W.2d 671, 673 (Tex.Civ.App.—Beaumont

1979, no writ); *McWhirter v. Morrow,* 203 S.W.2d 317, 319 (Tex.Civ.App.—Amarillo 1947, no writ). Until the option to purchase the Apperson property in this case was exercised by appellants in their attorney's letter of December 30, 1982, heretofore referred to, there was no legal binding contract of sale between the Appersons and appellants Tye and Brock. But when the appellants, the optionees, accepted the offer of appellees to sell before January 6, 1983, and in accordance with the terms specified in the option, there then existed a contract binding on both parties. *See McWhirter,* 203 S.W.2d at 319; *see also, Hott v. Pearcy/Christon, Inc.,* 663 S.W.2d 851, 854 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Kenver Corporation v. Robinson,* 492 S.W.2d 317, 319 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.); *Vratis v. Baxter,* 315 S.W.2d 331, 333 (Tex.Civ.App.—Beaumont 1958, writ ref'd n.r.e.). Appellees' rejection of the option by their letter of January 11, 1983, came too late and was ineffective. At this point a binding contract for the sale of the property by appellees existed. *See Humble Oil & Refining Co. v. Westside Invest. Corp.,* 428 S.W.2d 92, 94 (Tex.1968); *Sinclair Refining Co. v. Allbritton,* 147 Tex. 468, 218 S.W.2d 185, 188 (1949); *Smith v. Hues,* 540 S.W.2d 485, 490 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

We sustain appellants' point of error six and hold that they were entitled to specific performance of the option agreement. Accordingly, the judgment of the trial court is reversed and rendered. Specific performance of the sale of the property from appellees to appellants in accordance with the option agreement of February 6, 1978 is hereby ordered. The sum of $19,000.00, paid into the registry of the court as rental, with interest, is hereby ordered paid to appellees to be credited to appellants on their purchase of the subject property from appellees.

ASHWORTH, Justice, dissenting.

I respectfully dissent.

The majority opinion correctly states all principles to be observed in construing the two agreements in question and in reviewing the judgment of the trial court. However, the majority imposes a duty on the part of the optionor which is not specified by either agreement. As stated in the opinion, there was no legal binding contract of sale between the Appersons and appellants until the optionees accepted the offer to sell in accordance with the terms specified in the option and that such acceptance brought in existence a binding contract.

There was no duty imposed on the optionors under either agreement to advise the optionees that the option had terminated because of a default in the lease agreement. There is no duty to perform a useless act. Why should optionor be required to give notice of termination of the option when there is no way of knowing there will be an attempt to exercise the option? To carry the majority opinion to its logical conclusion, lessee could default after a tenancy of one year, be evicted from the property, and still have a right for four years to purchase the property because optionor gave no notice of termination of the option.

The judgment of the trial court is supported by the evidence, correctly applies the law, and should be affirmed.