Opinion issued November 20, 2008


 









In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00002-CV






SEYED HASSAN MOOSAVIDEEN, Appellant


V.


JOHN TRAVIS GARRETT; LILLIAN MARIAN FOOTE TIGARD; LUCY
LURLINE FOOTE MCKINSTRY; JOSEPH GARRETT FOOTE; MARY
JOSEPHINE FOOTE ENDLICH; JOHN G. MEADOR JR.; BARBARA
GENE MEADOR; MARY FRANCIS MEADOR SIMPSON; DANNA
MAHONEY MEADOR; MARY R. MEADOR CRAWFORD; GLENN
MEADOR JR.; SARA E. MEADOR; AND RICHARD L. DOEHRING,
TRUSTEE OF THE 4 TESTAMENTARY TRUSTS CREATED UNDER
THE LAST WILL AND TESTAMENT OF WILLIAM MOSELY
GARRETT, DECEASED, Appellees


* * * * 


JOHN TRAVIS GARRETT; LILLIAN MARIAN FOOTE TIGARD; LUCY
LURLINE FOOTE MCKINSTRY; JOSEPH GARRETT FOOTE; MARY
JOSEPHINE FOOTE ENDLICH; JOHN G. MEADOR JR.; BARBARA
GENE MEADOR; MARY FRANCIS MEADOR SIMPSON; DANNA
MAHONEY MEADOR; MARY R. MEADOR CRAWFORD; GLENN
MEADOR JR.; SARA E. MEADOR; AND RICHARD L. DOEHRING,
TRUSTEE OF THE 4 TESTAMENTARY TRUSTS CREATED UNDER
THE LAST WILL AND TESTAMENT OF WILLIAM MOSELY
GARRETT, DECEASED, Appellants


V.


SEYED HASSAN MOOSAVIDEEN, Appellant






On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. C-2003-23823






O P I N I O N


 We deny appellees' motion for rehearing. However, we withdraw our opinion
and judgment of July 26, 2007 and issue this opinion in their stead. 

 The issue presented by this appeal is whether a lessee validly exercised a
purchase option before being notified by the lessor that the lessee was in default on
the lease. We also consider whether a lessee can validly exercise a purchase option
despite being in default of the lease. We hold that (1) the lessee validly exercised the
purchase option before being notified that he was in default on the lease, and (2) the
lessee could exercise the purchase option anytime before the contract terminated
because the lease did not contain language in the option clause conditioning its
exercise on the lessee's performance of the terms of the lease. Accordingly, we
reverse and render in part and reverse and remand in part.


BACKGROUND

The 1928 lease

 In 1928, Lucy G. Travis, as lessor, and Edwin H. Wilder, as lessee, entered into
a 99-year lease of a tract of property located in Harris County, Texas. The lease was
freely assignable by either party, and its terms are binding upon the heirs, legal
representatives, and assigns of the original parties. Two terms of the lease are
relevant to the case before the Court. 

 Article XV of the lease, hereinafter referred to as the "purchase option,"
provides as follows:

 In consideration of the amount of the rental payments hereunder, paid
and to be paid, and of the other valuable considerations inuring to the
benefit of the LESSOR hereunder, the LESSOR hereby gives and grants
to the LESSEE, and LESSEE shall have an optional right at any time
within a period of the term of this lease, to purchase the interest of
Lessor in and to the demised premises described in ARTICLE 3 hereof,
as follows


 At and for an agreed purchase price of FIFTY
THOUSAND DOLLARS ($50,000.00) to be paid either in
cash, or one-half cash, and balance in five (5) equal annual
payments, with interest at seven percent (7%) per annum,
payable as it accrues, with Vendor's Lien reserved to
secure payment.


 If, and when LESSEE notifies the LESSOR, of his election to exercise
said option to purchase and demonstrates his readiness to pay the
amount specified above, LESSOR binds and obligates herself to
forthwith execute and deliver to LESSEE a conveyance of her interest
in the demised premises and all rights incident thereto, with covenants
of general warranty, conveying her said interest and title to said
premises free and clear of all encumbrances, judgments, or other liens,
subject only to this present lease and anyone claiming hereunder. After
receipt of notice of such election to purchase, the LESSOR agrees to
promptly furnish LESSEE a complete Abstract of Title to the demised
premises so that he may have the title examined before the deed is
executed. If and when said option is exercised and the purchase price
paid, all future rentals which otherwise would become due under this
lease shall cease and the LESSEE shall be under no obligation to the
LESSOR for anything accruing hereunder from and after the date of the
consummation of said sale.


 The 1927 lease also contained the following language in Article X:


 At no time during the life of this contract shall LESSEE permit to be
carried on in the demised premises, or any part thereof, any kind or
character of business whatsoever which is not permitted by law; and
LESSEE agrees at all times to perform any and all lawful requirements
in regard to the use and occupancy of the demised premises and
improvements, as well as to the use and occupancy of the streets and
sidewalks adjacent thereto, and agrees that he shall at all times conform
to such requirements and perform the same in such manner as to relieve
the LESSOR and the demised premises from any liability therefor. The
LESSEE shall have the right to use the demised property during the
lease term for any lawful purposes.


 Finally, the lease contained the following provision, whereby the parties were
obliged to notify one another of any change of address:

 All notice and delivery of papers herein mentioned and required to be
given shall be given in writing by registered mail properly addressed to
the address of the party for whom it is intended, and a registered receipt
from the postal authorities of the United States showing the mailing to
such party by registered mail at the proper address, together with a copy
of the notice sent in the hands of the sending party, shall conclusively
establish the giving of such notice. . . .


 The present address of Miss Luch G. Travis, is 4103 Rossmoyne,
Houston, Texas, and the present address of the lessee, Edwin H. Wilder,
is 1204 Milam St., Houston, Texas, to which addresses, until changed
as hereinafter provided, all notices required shall be mailed.


 In the event the address of any party hereto is changed or desired to be
changed from those stated in the preceding paragraph . . . it shall be the
duty of the party making or desiring to make such change to notify the
other party hereto . . . giving such notice his new address, which notice
shall likewise be given by registered mail.

 

The Subsequent History of the Lease


 Wilder, the original lessee, assigned the lease to Scott Shambaugh in 1929. In
1930, Shambaugh assigned the lease to The Texas Company ("Texaco"). Texaco
operated a service station on the property for almost 50 years. The undisputed
evidence shows that during the time the service station was in operation there were
no environmental regulations to report or remediate contamination of the soil. The
lease remained with Texaco (1) until 1989, when it was assigned to Hamid Liaghat and
Hassan Naghavi. 

Moosavideen Obtains the Lease and Attempts to Exercise Purchase Option

 On November 9, 2000, shortly before he acquired the lease, Moosavideen sent
a letter to three of the original lessor's heirs--Lucy Foote McKinstry, John Travis
Garrett, and John G. Meador, Jr.--expressing his interest in acquiring the lease for
the purpose of exercising the purchase option. He received no response. Three
months later, on January 22, 2001, Moosavideen acquired the lease from Liaghat and
Naghavi.

 Moosavideen was informed by his predecessors that Lucy G. Travis, the
original lessor, had four heirs to whom they had forwarded rent payments: (1) Lucy
Foote McKinstry, (2) John Travis Garrett, (3) Bank One Texas, N.A., as guardian of
the estate of Mildred Webster Garrett, and (4) John G. Meador. On May 18, 2001,
Moosavideen sent notice to these four heirs that he intended to exercise the option to
purchase.

 Having received no response, on August 6, 2001, Moosavideen again notified
these four heirs that he intended to exercise the option contract in the lease. 
Moosavideen also included a warranty deed he had obtained and requested that the
heirs correct any error in the listing of the owners and their percentage of ownership. 
The deed listed 15 owners and included signature blocks for each. Again, the heirs
did not respond to Moosavideen's request to exercise the option.

Moosavideen Files Suit and Sends Notice to More Heirs

 On November 1, 2001, Moosavideen filed suit, seeking a declaratory judgment
that he had validly exercised the option contained in the lease and was entitled to a
deed transferring the lease property to him, and for specific performance of the
option. During the course of discovery, Moosavideen determined the names of more
heirs and provided notice to them of his intent to exercise the option. However,
Moosavideen did not provide notice to the Estate of William Mosely Garrett (2) until
October 17, 2002.

The Heirs give Moosavideen Notice of Default

 On May 15, 2002--almost one year after Moosavadeen gave notice of his
intent to exercise the purchase option to the four heirs for whom he had
addresses--and again on September 13, 2002, the heirs notified Moosavideen that he
was in default of Article X of the lease. Specifically, their letter to him provided 

 Pursuant to Article X of the Lease, the Lessee is required to perform any
and all lawful requirements in regard to the use and occupancy of the
Lease Property and improvement and to at all times conform to such
requirements and perform the same in such matter as to relieve the
undersigned Lessor from any liability therefore [sic]. You have
subjected the Lessor and Lease premises to liability as a result of the use
and occupancy of the Lease Property as a service station, in a manner
inconsistent with applicable environmental laws/regulations.


The default provision of the lease provides as follows:

 If default be made by LESSEE in the performance of any one or more
of the covenants contained in this lease (other than the covenants to pay
rents or other monies . . .) and LESSOR shall, in writing, notify LESSEE
. . . of such default or defaults, and if such defaults are not corrected by
LESSEE . . . within one hundred and eighty (180) days from the date of
said notice, then LESSOR may forthwith declare said lease cancelled in
the manner and with the results specified in subdivision (a) next above.


 Thus, under the express terms of the lease, Moosavideen had 180 days--until
November 12, 2002--to cure the claimed default. 

Moosavideen Finally Gives Notice to All Heirs

 Moosavideen did not cure the claimed default. Instead, on October 17, 2002,
during the "cure period," Moosavideen finally gave notice of his intent to exercise the
purchase option to the Estate of William Mosely Garrett, the last remaining heir to
whom notice had not been given. In response, the heirs claimed that they were no
longer required to transfer the property pursuant to the option because, at the time he
gave notice to all heirs, Moosavideen was in noticed, but uncured, default.

The Trial Court's Ruling

 The case proceeded to trial before the court. Most of the evidence was
stipulated by the parties, with the exception of testimony from the environmental
experts. The trial court made the following findings of fact, which are relevant to this
appeal:

 16. At all times relevant to this cause (but certainly from 11/09/00)
Plaintiff was in material default and breach of the Lease by virtue of the
environmental contamination [in violation of Article X of the lease].


 17. On 05/15/02 and again on 09/13/02, Defendants notified Plaintiff
of his material default/breach under the Lease by virtue of the
environmental contamination (collectively the "default notice"), and of
their intent to forfeit and cancel the Lease if such default and breach was
not cured within 180 days of such default notice, all in accordance with
and as was their right under Article V(b) of the Lease.


 18. Under Article V(b) of the Lease, Plaintiff had until November 12,
2002 to cure his Lease default and material breach by virtue of the
environmental contamination, but failed and refused to do so.


 19. The Lease was thereupon validly terminated and canceled by
Defendant for duly noticed but uncured material breach, thereby
entitling Defendants to immediate possession of the Lease Property.


 20. Plaintiff attempted to notify Defendants of his intent to exercise the
Lease Purchase Options earlier (by letters dated May 18, 2001, August
6, 2001, August 2, 2002, and October 14, 2002), but such notice was not
effective and Plaintiff was already in material breach of Article X of the
Lease because of the environmental contamination of which he was
aware.


 21. On 10/17/02, Plaintiff effectively notified Defendants, the Lessor,
of his intent to exercise the Lease Purchase Options ("Notice of intent
to exercise Lease Purchase Option"), but Plaintiff was not entitled to
exercise the rights and purchase option granted in Article XV of the
Lease by virtue of his previously noticed but uncured material breach of
Article X of the Lease.


 23. The notice of address change provision in Article XIII of the Lease
did not apply to any of the Defendants at any time relevant to this case,
as none of them changed their addresses.


The following conclusions of law are also relevant to this appeal:

 1. Plaintiff was not entitled to exercise the rights and option granted in
Article XV of the Lease so long as he was in noticed but uncured
material breach and default of the Lease under Article X.


 2. Notice of intent to exercise Lease Purchase Option was not effective
under the Lease until such notice was received by all of the Defendants.


 3. As a matter of law, Plaintiff was at the time he acquired the lessee
interest in the Lease, on constructive notice of the Estate of William
Mosely Garrett, deceased's undivided 25% lessor ownership of the
Lease and of the Lease Property, by virtue of the probate records on file
in Cause No. 96649, Harris County Texas, yet he failed to notify the
Estate of William Mosely Garrett, deceased of his intent to exercise the
Lease Purchase Option until 10/17/02, more than 4 months after
Defendants' notice of Lease default and of intent to forfeit the Lease.


 5. Plaintiff was in noticed but uncured breach of the Lease at the time
he attempted to take advantage of the Lease Purchase Option therein
and, therefore, was not entitled to do so.


Based on these findings and conclusions, the trial court awarded the heirs $88,456.16
in damages, plus attorneys fees, for Moosavideen's breach of the lease. The trial
court also awarded Moosavideen a $150,268.02 equitable offset against the
judgment--an amount equal to the purchase price of the lease, plus taxes
Moosavideen paid on the leased property.

WAS PURCHASE OPTION VALIDLY EXERCISED?


 In issue one, Moosavideen contends the trial court erred in concluding that he
was barred from exercising the purchase option. In issue two, Moosavideen contends
the heirs did not validly terminate the lease before he exercised the option.
Specifically, Moosavideen claims that (1) he validly exercised the option on May 18,
2001, when he gave notice of his intent to exercise the option to the four heirs who
had been accepting rental payments, or (2) he validly exercised the option on August
2, 2002, when he gave notice to all of the heirs except the estate of William Mosely
Garrett, because he had given effective notice to the Garrett estate by notifying Bank
One, as he had been instructed by an attorney for the estate, or (3) he validly
exercised the option on October 14, 2002, when he finally gave notice to all heirs,
including the estate of William Mosely Garrett. 

Option Exercised on May 18, 2001

 We first address Moosavadeen's argument that he validly exercised the option
on May 18, 2001, almost one year before he was placed in default by the heirs. 
Specifically, Moosavadeen argues that, by giving notice to the only four heirs for
whom he had actual knowledge of addresses, he had complied with the terms of the
lease. 

 In pertinent part, Article XIII of the lease provides as follows:

 The present address of Miss Lucy G. Travis, is 4103 Rossmoyne,
Houston, Texas, and the present address of the lessee, Edwin H. Wilder,
is 1204 Milam St., Houston, Texas to which addresses until changed as
hereinafter provided, all notices required shall be mailed.


 In the event the address of any party hereto is changed or desired to
be changed from those stated in the preceding paragraph . . . it shall
be the duty of the party making or desiring to make such change to
notify the other party hereto . . . giving in such notice his new address,
which notice shall likewise be given by registered mail. (Emphasis
added). 


 Nevertheless, the trial court found that "[t]he notice of address change
provision in Article XIII of the Lease did not apply "to any of [the heirs] at any time
relevant to this case, as none of them changed their addresses." The trial court further
found that Moosavadeen's "[n]otice of intent to exercise Lease Purchase Option was
not effective under the Lease until such notice was received by all of the Defendants."

 Moosavadeen argues that, under the express terms of the lease, lessees who
wished to changed their address from that given in the lease--4103
Rossmoyne--were required to give him notice of the change; he also argues that the
heirs stipulated that they had not provided such notice. We agree. 

 Under the lease, any lessor wishing to change his address for receiving notice
from 4103 Rossmoyne was required to notify the lessee notice of the change by
registered mail. The trial court erroneously concluded that Article XIII did not apply
because none of the heirs had changed his address. It is irrelevant that the heirs had
not changed the addresses at which they resided. At issue is the lessors' duty in the
event he or she wished to change the address for receiving notices under the lease
from 4103 Rossmoyne to some other address.

 The undisputed evidence shows that on May 18, 2001, Moosavadeen gave
notice to all the heirs for whom he had an address, and that the remaining heirs had
never changed their addresses for receiving notice as required by the lease. Because
Moosavadeen's failure to provide notice to the remaining heirs was brought about by
the conduct of those heirs through their failure to comply with Article XIII of the
lease, Moosavadeen's failure to give notice to them separately is excused. See Jones
v. Gibbs, 130 S.W.2d 265, 272 (Tex. 1939) (stating that "failure of the optionee to
strictly comply with the terms or conditions of the option will be excused when such
failure is brought about by the conduct of the optionor."); see also Tiffany Dev. Corp.
v. Cangelosi, 514 S.W.2d 321, 325 (Tex. Civ. App--Houston [1st Dist.] 1974, no
writ) (holding same).

 Because some heirs did not comply with Article XIII of the lease,
Moosavideen's notice of intent to exercise the purchase option was complete when
he gave notice on May 18, 2001 to the only four heirs for whom he had either
received notice or had actual knowledge of their addresses. Thus, Moosavideen
validly exercised the option to purchase almost one year before he was given notice
of his default under the lease.

Condition Precedent

 Even if we were to hold that Moosavideen had not validly exercised the option
before he was given notice of default, we would nonetheless conclude that he was
entitled to exercise the option any time before the contract was terminated because
his compliance with the other terms of the lease was not a condition precedent to his
right to exercise the lease purchase option. 

 Moosavideen claims that his right to exercise the purchase option was not
conditioned on his compliance with the other clauses of the lease. He further argues
that because the contract had not been terminated by the time he first attempted to
exercise the option, the heirs should be required to specifically perform the option
contract by transferring the property to him. The heirs respond that Moosavideen's
right to exercise the option was conditioned on his compliance with the other terms
of the lease, and that once they notified him that they intended to terminate the lease
[after a 180-day cure period], he no longer had the right to exercise the option to
purchase. The issue presented to the court is thus: Can a lessee exercise an option-to-purchase contract in a lease even though he is in noticed, but uncured, default of
other terms of the lease? Put more simply, could Moosavideen exercise the option
contract during the 180-day cure period?

 We first consider whether Moosavideen's compliance with the terms of the
lease is a condition precedent to his right to exercise the purchase option. In Cook
v. Young, 269 S.W.2d 457, 458 (Tex. Civ. App.--Fort Worth 1954, no writ), a lessee
filed suit, seeking specific performance of an option-to-purchase clause in a lease
contract. The trial court granted summary judgment in the lessee's favor. Id. On
appeal, the lessor argued that the summary judgment was improperly granted because
there was a fact issue regarding whether the lessee had complied with the terms of the
lease by paying all water, gas, and other utility bills accruing on the leased property. 
Id. at 460. The court of appeals held that compliance with the terms of the lease was
not a condition precedent to the optionee's right to exercise the purchase option. Id. 
"While we find such a provision in the lease contract, we do not find it in that part of
the instrument containing the option to purchase. The option is unconditionally
granted and there is no requirement creating any condition precedent or otherwise
limiting the right to exercise the option." Id.

 In Giblin v. Sudduth, 300 S.W.2d 330, 332 (Tex. Civ. App.--Austin 1957, writ
ref'd n.r.e.), the following purchase option was included in the contract of sale of an
adjoining tract of land:

 The seller agrees to give the purchaser an option on the acre tract joining
the property they are buying from the seller on the east; this option will
be for 5 years and the purchasers can take up their option at any time
within 5 years from the date by pay [sic] the seller $1500.00 in cash. 
The purchaser agrees to pay a yearly rental of $10.00.

The purchaser brought an action for specific performance of the option contract. Id.
at 331. The court of appeals held that the purchaser's failure to pay the annual rental
amount did not operate to bar the action for specific performance. Id. at 334. "The
option was not conditioned upon the payment of the annual rental, the option was for
five years and the purchasers were allowed to take up their option at any time within
five years by paying the seller $1500.00 in cash." Id.

 As in Cook and Giblin, the option clause in this lease agreement is not
conditioned on the lessee's performance of the terms of the lease. The option
provides that "[i]n consideration of the amount of the rental payments hereunder, paid
and to be paid, and of the other valuable considerations inuring to the benefit of the
LESSOR hereunder, the LESSOR hereby gives and grants to the LESSEE, and
LESSEE shall have an optional right at any time within a period of the term of this
lease, to purchase the interest of Lessor in and to the demised premises . . ." 
(Emphasis added.) While the option provision recites the rental payments as
consideration, it does not condition the right to exercise the option on compliance
with any of the other terms of the lease. Instead, the language clearly states that the
option can be exercised "at any time within a period of the term of this lease." It is
undisputed that, at the time Moosavideen was able to finally give notice to all of the
heirs, on October 14, 2002, rental payments were current, the lease had not yet
terminated, and could not be terminated until November 12, 2002, when the "cure"
period expired.

 Had the parties wished to create a condition precedent to the lessee's right to
exercise the option agreement conditioned on the lessee's compliance with the terms
of the lease, they could have done so. For example, in Tidwell v. Lange, 531 S.W.2d
384, 385 (Tex. Civ. App.--Waco 1975, no writ), the option to purchase in the lease
read as follows:

 [P]rovided that lessee while not in default hereunder and during the final
month of this lease term, is hereby given the privilege of purchasing said
premises for the sum of $26,000 ($2,600 cash down payment and a note
for the balance payable in monthly installments at 8% interest for a 15
year period). (Emphasis added.) 


At the time he gave notice of his intent to exercise the purchase option, the lessee was
two months in default on the monthly lease rental payments. Id. The court held that
the lessee's notice of his intent to exercise the option was ineffective because,
contrary to the terms of the option, the lessee was in default [due to nonpayment of
the lease] at the time he attempted to exercise the option. Id. at 386. Put another way,
the lessee's right to exercise the option to purchase was specifically conditioned on
the fact that he not be in default at the time he exercised the option. In contrast, there
in no language in the present lease that requires the lessee to free from default before
exercising the option contract.

 Another instructive case is Tye v. Apperson, 689 S.W.2d 320, 321 (Tex.
App.--Fort Worth 1985, writ ref'd n.r.e). In Tye, the purchase option provided:

 [T]his Option Agreement is conditioned upon the true and full
performance of all of the Lessee's obligations under the terms and
conditions of that Lease Agreement. Should [lessee] default or
otherwise be in violation or breach of any of the terms and conditions of
that Lease Agreement, then, at Optionor's election, this Option
Agreement shall lapse and be null and void for all purposes.


Id. The lessee attempted to exercise the purchase option, and the lessor responded
that the option had lapsed. The court noted as follows:

 The right to terminate the grant of the option . . . is not self-executing. 
The grant of the option does not self-destruct even though the lease
terms are breached; before the option lapses, . . . the optionors, must
have elected to terminate the option and agreement and declare it null
and void for all practical purposes.


Id. at 323. The court held that the lessor did not declare the option agreement to be
lapsed and terminate the contract until after the lessee exercised the option, therefore
the lessee had properly exercised his right under the option agreement and the lessee
was entitled to specific performance. Id. at 323-24. Thus, even when an option
contract requires compliance with the terms of the lease, if termination of the contract
is at the option of lessor, and the lessor has not declared the option lapsed, the lessee
may exercise the purchase option. But, as we stated earlier, the option contract in this
case does not condition the right to exercise the option on the lessee's compliance
with the terms of the lease.

Summary

 In sum, we hold that the heirs could not prevent Moosavideen from exercising
the option to purchase by claiming that he had not given each of them notice, when,
in fact, the heirs had not given Moosavideen any address other than 4103 Rossmoyne,
as required by Article XIII of the lease. Therefore, Moosavideen validly exercised
the lease purchase option on May 18, 2001, when he gave notice to the four heirs for
whom he had actual knowledge of their addresses.

 Additionally, the parties could have, but did not, condition the lessee's right
to exercise the purchase option on the lessee's not being in default of the lease. 
Because Moosavideen's compliance with Article X of the lease was not a condition
precedent to his right to exercise the purchase option, the trial court erred in finding
that "[Moosavideen] was not entitled to exercise the rights and purchase option
granted in Article XV of the Lease by virtue of his previously notice but uncured
material breach of Article X of the Lease." 

 Moosavideen validly exercised the purchase option before it terminated. On
that date--May 18, 2001--the purchase option was converted into a contract of
purchase and sale. See Sinclair Refining Co. v. Albritton, 218 S.W.2d 185, 188 (Tex.
1949) ("[T]he act of delivering the notice [of intent to exercise purchase option], if
performed within the time limit and not otherwise invalid, forthwith converts the
[purchase] option into a contract of purchase and sale.").

 Accordingly, we sustain issues one and two. We reverse the portion of the
judgment declaring that Moosavideen was not entitled to exercise the purchase
option.

DAMAGES FOR BREACH OF THE LEASE

 In issue three, Moosavideen contends that the trial court erred by awarding
damages against him for breaching the lease. Specifically, Moosavideen contends
that the heirs did not incur these damages until after he exercised the purchase option.

 The trial court judgment provided that the heirs "have and recover damages
against Moosavideen for breach of the Lease contract in the amount of $88, 456.16
for cost to assess the environmental contamination of the Lease Property." The
undisputed evidence shows that the heirs incurred these damages in February and
October of 2002. However, we have already held that Moosavadeen validly exercised
the lease purchase option on May 18, 2001, before these damages were incurred. On
that date, the option contract was converted to a purchase and sale agreement and the
landlord-tenant relationship ceased. Thus, the heirs' damages were not caused by
Moosavideen's breach of the contract. However, we do not hold that Moosavideen
could never be liable to the heirs for breaching Article X of the lease simply because
he purchased the property.

 Accordingly, we sustain issue three. We reverse the portion of the judgment
awarding breach of contract damages because the damages were not caused by
Moosavideen's breach. 

EQUITABLE OFFSET

 In their cross-appeal, the heirs argue that the trial court erred by awarding
Moosavideen an equitable offset against their judgment for the amounts that he spent
to acquire the lease and on taxes. Moosavideen agrees that, if the Court holds that he
validly exercised the purchase option, the equitable offset should be reversed. 
Accordingly, because we have reversed the damages awarded to the heirs and
declared that Moosavideen validly exercised the purchase option, we also reverse the
equitable offset that the trial court awarded him. ATTORNEY'S FEES AND COSTS

 The trial court also awarded the heirs attorney's fees pursuant to Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (Vernon Supp. 2008), which allows the trial court
to award attorney's fees and costs that are "equitable and just" in a declaratory
judgment action. Moosavideen argues that we should reverse the attorney's fees and
costs awarded to the heirs and render an award of attorney's fees and costs to him. 

 It is appropriate to award attorneys' fees to the prevailing party in a declaratory
judgment action if the trial court believes such fees to be reasonable and necessary
and the award of such fees to be equitable and just. State Farm Lloyd's v. Borum, 53
S.W.3d 877, 894 (Tex. App.--Dallas 2001, no pet.). However, the trial court is not
required to award attorney's fees to the prevailing party in a declaratory judgment,
and, indeed, may award attorney's fees to the nonprevailing party. Id. Because we
have reversed the declaratory judgment, and the judgment does not indicate whether
the award of attorney's fees and costs to the heirs was made because they were the
prevailing party at trial, we reverse the award of attorney's fees and costs and remand
both parties' claims for the same to the trial court for its reconsideration in light of
this opinion. See id. at 894-95.

CONCLUSION

 We reverse the declaratory judgment in favor of the heirs and render judgment
declaring that Moosavideen is entitled to specific performance to exercise the
purchase option granted in Article XV of the lease. We also reverse the portion of
the judgment awarding the heirs $88,456.16 in damages against Moosavideen on their
breach of contract claim and render judgment that the heirs take nothing on such
claim. We also reverse the portion of the judgment granting an equitable offset to
Moosavideen and render judgment that he take nothing on such claim. Finally, we
reverse the award of attorney's fees and costs to the heirs and remand both parties'
claims for attorney's fees and costs to the trial court for further proceedings. 



 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Jennings, and Bland.

1. 
 
 "" 
2.